FIDELITY & CASUALTY COMPANY OF NEW YORK v. GILLETTE-
HERZOG MANUFACTURING COMPANY.[1]

June 3, 1904.

Nos. 13,714—(8).

**Indemnity Insurance—Premiums—Accord and Satisfaction.**

Under indemnity policies issued to the owners of a foundry and machine
shop against liability to employees and others from accidents through
alleged negligence of the insured, the initial premiums being paid upon
the estimated number of the employees under an agreement that there
was to be a subsequent adjustment based upon the actual number engaged
and wages paid, the insurer to receive the excess due and the insured to
have rebates for overpayment, a settlement of such excesses and rebates
after the life of the policies was made with full knowledge by each party
of the number of employees and occupation of each. *Held* to be an accord
and satisfaction protecting the insured in an action thereafter for unpaid
premiums claimed by the insurer.

**Mistake of Law.**

Whether or not, upon a construction of the policies, the excluded em-
ployees in such settlement should have been made the basis of a demand
for the excess, both parties having ample means of information of all
the facts, the omission must be treated as a mistake of law, which forbids
in this action a reinvestigation of the controversy.

Action in the district court for Hennepin county to recover $2,117.40
premiums alleged to be due upon certain policies of indemnity insur-
ance issued to defendant. The case was tried before Harrison, J., who
found in favor of defendant. From an order denying a motion for a
new trial, plaintiff appealed. Affirmed.

*T. A. Garrity* and *Brown & Kerr,* for appellant.

*Rome G. Brown, Charles S. Albert,* and *George F. Edwards,* for re-
spondent.

LOVELY, J.

Plaintiff is a corporation writing insurance against liability from ac-
cidents occurring to employees and others for the benefit of the em-

[1] Reported in 99 N. W. 1123.

ployer.   Defendant during the year 1897 was engaged in the business of operating a foundry and machine shop in Minneapolis, as well as in the erection of bridges and architectural ironwork construction at all places where employed for that purpose.   Its business was divided into separate departments, conducted under the same management, and operated through the same office force, who kept its accounts with customers.   In January, 1897, plaintiff issued to defendant three indemnity policies of concurrent date to continue for one year, two of which were termed "general liability policies," wherein protection to a certain amount was guarantied for damages recovered on account of bodily injuries accidentally suffered by employees of the insured while on duty, under the terms of applications and schedules thereto attached. The third policy agreed to indemnify defendant against damages recovered for accidents suffered by persons not employed by defendant, according to the terms of the policy, applications, and schedules, through the negligence of the insured, and resulting from the operation of its business.   The initial premiums paid on the issuance of the three policies were based upon an approximate estimate of the wages supposedly to be expended to defendant's employees, but it was agreed in the policies that, if the total wages actually paid and earned by the employees was less than the amount estimated in the premiums paid, defendant would be entitled to a rebate to that extent, but, if in excess, the plaintiff would be entitled thereto.

The course adopted for an adjustment of the rebates and excess premiums thus provided for would require an examination of the amount actually paid for wages during the time when the policies were in force, necessarily to be made after the termination thereof, in a settlement for that purpose upon inspection of the books and payrolls of the defendant.   Such a settlement was made in the spring of 1898, after the policies had expired, at a meeting of a representative of plaintiff and also of the defendant, who agreed to an adjustment of differences and compromised the same.

Some five years afterwards plaintiff, upon a new consideration of the relative rights and liabilities of the parties under the agreement for excess premiums, became satisfied that the executive office force—defendant's president, manager, superintendent, etc., also draftsmen and clerks—had not been included on its estimate of amounts demanded for

premiums, and brought this suit to recover the alleged excess to the extent of several thousand dollars, upon the ground that the employees referred to ought lawfully, under a proper construction of the policies, to have been included in the wage basis of settlement in 1898.

It was not questioned that the employees referred to were omitted from the adjustment of the premiums at the settlement, and there was in the trial court, as here, an extended discussion upon the legal construction of the terms of the policies, as well as the limitations of the applications and schedules; the plaintiff contending that the wages paid the executive officers, clerks, and draftsmen should have been included in the estimation of premiums due, while, on the other hand, the defendant insisted that such employees were not within the hazards of the business in which defendant was engaged, or the purview and scope of the indemnity provided for in the policies. The cause was tried to the court, who made findings of fact to the effect that the amounts agreed upon had been fully adjusted between the parties, and their respective claims for excess premiums and rebates settled and paid, designating the amounts of the payments by the parties respectively; that in accordance therewith a bill of account was rendered by defendant for excess premiums, which was settled and paid.

It appears from the evidence that within three months after the policies had expired, and several years before this action was brought, the representatives of both parties met; that the payrolls and books of defendant were examined, and the important fact that the employees excluded from the computation upon which the premiums and rebates were adjusted was known, or easily within the means of knowledge of the plaintiff. There was no concealment or suppression of any fact by defendant necessary to a proper compromise of the relative rights of the parties upon the wage basis contemplated and provided for in the policies. It appears also that the defendant soon after the settlement, and before this action, had gone out of business, and that many of its books and papers had been destroyed under a supposition that they would not be required for any future adjustment of differences between the parties. It is undoubtedly true that the plaintiff conceded without protest the theory of defendant that the wages paid the executive officers, clerks, and draftsmen were not the subject of controversy in determining the amount due the plaintiff. But it is also apparent that

plaintiff neglected to make any demands therefor; although it had possession of the same facts to enable it to arrive at its conclusion in this respect that it obtained afterwards upon a re-examination of the subject.

Conceding that any suppression of facts by the defendant as to the number of employees, the character of the services of each, or that any misrepresentations in this respect would not conclude the plaintiff, it is sufficient to say that no such claim is now made, nor could it be established by any evidence in the récord. From the nature of the agreement, which required an examination of the payrolls and books of the defendant, a settlement was essentially necessary, and contemplated in the insurance contract. It was had. The means of information upon which plaintiff's claim could have been made was open to it, and the most that can be said is it failed to appreciate its legal rights. Because the hazards incurred in the business were not alike and of the same nature as to all employees may have led to the concession that these could be excluded from the estimation adopted by both parties in the settlement; but it seems very clear that, if the claims of the parties in this respect were erroneous, the settlement upon the basis adopted was through a mistake of law, rather than of fact.

Indeed, if there were to be new adjustments upon the demand of the plaintiff, it could have no further information today than it possessed at the time of the settlement in 1898, and from the loss or destruction of defendant's books and payrolls, which may have resulted from reliance upon the compromise already made, it might have less. The plaintiff cannot now rightfully make the claim that it did not include a certain class of employees, when it might legally have done so. Its omission in not demanding and insisting upon its rights, in the absence of fraud, concealment, or misrepresentation, could not abrogate the binding effect of the compromise where both parties, presumably alive to their interest, met for a legal adjustment of differences, and upon undisputed facts effected the same. Hanley v. Noyes, 35 Minn. 174, 28 N. W. 189; Hall v. Wheeler, 37 Minn. 522, 35 N. W. 377; Truax v. Miller, 48 Minn. 62, 50 N. W. 935; Rice v. London & N. W. Am. M. Co., 70 Minn. 77, 72 N. W. 826; Jordan v. Great N. Ry. Co., 80 Minn. 405, 83 N. W. 391.

We have no doubt that the questions which were presented as con-

templated by the policies in the settlement between the parties cannot be opened to avoid the same upon the plea of ignorance or mistake of law. Perkins v. Trinka, 30 Minn. 241, 15 N. W. 115; Hinkle v. Minneapolis & St. L. Ry. Co., 31 Minn. 434, 18 N. W. 275; Erkens v. Nicolin, 39 Minn. 461, 40 N. W. 567.

We are earnestly requested to decide upon the construction of the policies, but this is not necessary to the disposition of this appeal. The law favors settlements, and when, as here, it is clear from the findings of the trial court upon sufficient evidence that such a disposition of that controversy has been effected, we should not go beyond this issue, which is of primary importance, since the problems involved in the interpretation of the policies would not necessarily be determinative in any future cause, and we decline for that reason to express our views upon questions not decisive of "this particular case."

Order affirmed.