## KINCAID v. NEW YORK LIFE INS. CO.
### No. 6864.

Circuit Court of Appeals, Fifth Circuit.
July 25, 1933.

George P. Garrett, of Orlando, Fla., for appellant.

J. L. Doggett, of Jacksonville, Fla., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from the dismissal on motion of a bill in equity brought by Nellie T. Kincaid against New York Life Insurance Company on two identical policies of $5,000 each on the life of her husband, James Kincaid. The case is the same for each policy, and for simplicity one only will be referred to. The important facts alleged and to be taken as true are as follows: The policy which issued in 1920 required an annual premium payable in advance on June 30th of $250.05, including $12.75 for a total disability benefit one feature of which was that premiums would be waived beginning at the next ensuing anniversary of the policy.

Grace of thirty days was allowed for payment of premiums. There was after the second year to be an annual apportionment of the company's surplus in dividends, which by an option exercised in the application were to be applied towards the payment of premiums; but the surrender value was defined as the reserve on the policy ascertained in a prescribed way and stated in a table, plus dividends standing to the credit of the policy, less a stated surrender charge. On a lapse of the policy the surrender value is applied to purchase extended insurance. An advance against the policy of $880 with 6 per cent. interest was made in June, 1927. On June 30, 1929, $52.80 interest was due and unpaid, making $932.80 to stand against $1,075 surrender value exclusive of dividends. On that date default was made in payment of the premium due. Thereupon quarterly premiums of $66.30 were arranged for, the first one to be paid July 30th, the last day of grace. Kincaid did not pay it. On August 6, 1929, the company notified him that the policy had lapsed for nonpayment. On August 8th he applied for reinstatement, making answers to questions touching his health. On August 16th the company for the first time notified him of dividends declared in June, 1928, and June, 1929, aggregating $122.85. On November 12, 1929, the reinstatement was put through with premiums paid up to December 30, 1929; probably, though not so alleged, by the use of the dividends. Premiums were afterwards paid through December, 1930, and $52.80 was paid as annual interest on the advance June 30, 1929, and June 30, 1930. In March, 1931, Kincaid claimed a total disability, and in reply the company, asserting false statements by him in obtaining the reinstatement, elected to rescind it and offered him a check for $489.75 for premiums and interest paid in making the reinstatement and since, stated the policy stood lapsed as of June 30, 1929, and that the reserve value on that date above the advance against the policy had purchased term insurance for one year and 204 days to January 20, 1931, which having passed, the policy stood expired. Kincaid denied any false statement, asked the company to withdraw its claim of rescission, and tendered the March, 1931, premium, which the company refused to accept. Correspondence continued without effecting any change in the company's position until June 12, 1931, when Kincaid cashed the check. He did not tender any premium on June 30th, and died September 18th before the next one fell due. It is alleged that there was in fact no false statement in connection with the reinstatement; that because of the dividends there was no lapse of the policy requiring a reinstatement; that the policy was in force when total disability occurred and stopped liability for premiums; that Kincaid never agreed to rescind his policy and did not tender the premium on June 30, 1931, because of the refusal to accept that of March 30th, and he did not in fact owe the June premium. It is alleged that the check sent him did not include the premium and interest paid June 30, 1929, nor any settlement for the cash surrender value on the policy at that date, and there was no consideration for any rescission of the policy, that he never agreed to any cancellation of it, and that the check sent him did not state that it was in full of all claims against the company. Judgment of dismissal was rendered on the ground that his cashing the check for $489.75 necessarily ended all claims under the policy.

■ Despite its equitable dress this is only a suit on the policy which anticipates defenses and seeks to reply to them. There is a prayer for an accounting, but the plaintiff is not the personal representative of Kincaid. As nominated beneficiary in the policy, she recovers on its promise to pay her or fails altogether. The question is whether the policy was of force at his death. We agree with plaintiff that it did not lapse June 30, 1929. After arranging during the grace period for quarterly premiums, the company was bound by the provisions of the policy and the application for it to apply the dividends to the payment of the premium then due since they were sufficient to pay it. It could not avoid this duty by withholding knowledge of the dividends until after the grace period expired. The premium of $66.30 due in June, 1929, was therefore paid by the dividends of $122.85, leaving $56.55 for the credit of the next premium due December 30. Premiums were thereafter paid through December 30, 1931. There being no lapse, and no necessity to reinstate, the validity of the reinstatement is in itself of no importance. The policy was of force when in March, 1931, total disability is claimed. The March premium was tendered and rejected, which counts as payment. No premium was due June 30th if there was total disability, because thereby premiums were waived beginning with the next anniversary date of the policy. If on the other hand there was in fact no total disability, the surrender value on the policy was ample to carry it as extended insurance until Kincaid's death in September, 1931. Mrs. Kincaid is therefore entitled to recover unless the cashing of the

check for $489.75 on June 12th ended her rights under the policy. As to this Mrs. Kincaid is, of course, bound by what her husband did. She indeed was sent a duplicate of the letter which was sent him by the company announcing its position and offering the check. Full liberty to change the beneficiary was reserved in the policy, so that she had no vested rights but was only his appointee to receive the insurance if any should be due at his death. See cases collected in Southern Lumber Co. v. Pearce (C. C. A.) 60 F.(2d) 477, at page 478. Neither the letters which accompanied the check and stated the position of the company nor any of the correspondence which followed are exhibited, and their purport is but generally stated. The alleged purport of the letter offering the check is "that the Company elected to rescind the reinstatement of the said policy because of the failure of James Kincaid to disclose to it in his application for reinstatement material facts as to his insurability, and that said policy stood lapsed for nonpayment of the premium due June 30, 1929; that the reserve value of said policy as of the date of the lapse was sufficient to purchase term insurance of $4,068.00 for one year and 204 days from date of lapse to Jan. 20, 1931, and that period having elapsed the policy was of no value." The money was tendered as a return of what had been paid by reason of the rescinded reinstatement, but no statement is alleged to have accompanied it to show what items it included. Kincaid contended that the reinstatement was not fraudulent and not rescindable. In finally accepting the money, he necessarily agreed that it was rescinded, for on no other basis would he be entitled to any money from the company. The disability which he claimed would not require the payment to him of anything until a year after June 30, 1931. In taking this money back on June 12, 1931, he must have taken it because of a consent to rescind the reinstatement. But a rescission of the reinstatement did not rescind the policy, which was a distinct contract made nine years before, unless the terms upon which the money was offered made it more clearly a settlement in full of all demands than now appears. The policy contract still stood on its own merits, but unaided by the rescinded contract of reinstatement or by the returned premiums. Kincaid could claim no benefit from those premiums after putting them back in his pocket. If a lapse as of June 30, 1929, is assumed, seven premiums of $66.36 each and two payments of interest on the advance of $52.80 each should have been returned, making a total of $569.70, which with legal interest would approach $625 instead of the $489.75 paid. In view of this discrepancy, it must be that the dividends of $122.85 to the credit of the policy have not been paid to and accepted by Kincaid, but were on June 30, 1929, and still are, available to pay the quarter's premium then due and postpone lapse, or else to be added to the reserve to purchase extended insurance upon the happening of the lapse. But the pleadings do not allege, and we are unable to figure, that even then the policy would be carried to the date of death. Consequently, although the rescission of the reinstatement be held not to involve a settlement of the policy, the policy is not shown to be extended by the dividends and values inherent in it until death. No right of recovery therefore appears.

It is alleged that the acceptance of the money in June, 1931, was induced by the company's false assertion in August, 1929, repeated in its letter of March, 1931, that the policy had lapsed and required reinstatement. The incorrectness of the original statement became apparent a few days after it was made when the company disclosed the existence of the dividends. In March, 1931, whatever confidence ordinarily exists between insurer and insured was broken. The company was then claiming a dissolution of the relationship, and was dealing at arm's length with Kincaid. He labored under no legal disability or handicap. He fully understood the facts and must be held chargeable with knowledge of the provisions of his policy and his rights under them. If he did not understand them, he ought to have gotten advice. The company's offer of the check for $489.75 as a return of premiums was debated for more than two months. Nothing appears to show that its final acceptance was caused by anything else than a deliberate election to take the money, with such consequences as followed therefrom.

While we thus hold that the present petition shows no cause of action and affirm its dismissal, we have had doubt whether a correct figuring of the extension of $4,068 of the insurance might not carry it beyond the date of death. Because of this doubt we modify the dismissal so as to be without prejudice.

Modified and affirmed.