58 P.(2d) 1175

WARREN v. NEW YORK LIFE INS. CO.

No. 4102.

Supreme Court of New Mexico.

May 26, 1936.

Wilson & Watson, of Santa Fé, for appellant.

Woodward & Wilson and K. Gill Shaffer, all of Albuquerque, for appellee.

SADLER, Chief Justice.

The plaintiff (appellee) seeks payment through this suit of disability benefits under a certain life insurance policy issued to him on April 5, 1922, while a resident of Chicago, Ill.

Pertinent policy provisions are as follows:

"And the company agrees to pay to the insured *one per cent of the face of this policy ($10 per $1,000)* each month during the lifetime of the Insured and also to waive the payment of premiums, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof. * * *

"Disability Benefits shall be effective upon receipt at the Company's Home Office, before default in the payment of premium of due proof that the Insured became totally and permanently disabled after he received this Policy and before its anniversary on which the Insured's age at nearest birthday is sixty years."

The policy lapsed for nonpayment of the semiannual premium due October 5, 1928. Subsequently, the policy was reinstated by the defendant on the faith of an application for reinstatement, signed by plaintiff on December 4, 1928, in which he made answer to certain questions propounded touching the state of his health, as follows:

"I hereby apply for the Reinstatement of the above numbered policy which lapsed for non-payment of premium due on the —— day of 10–5–28 192–, and, for the purpose of inducing the company to reinstate said Policy, I make the representa-

tions contained in my answers to the following questions:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give details) Ans. Yes.

"2. Within the past 12 months have you had any illnesses or consulted or been treated by any physician or physicians? (If so, give details) Ans. No."

In September, 1929, after reinstatement of the policy, the plaintiff entered the Albuquerque Sanatorium, at Albuquerque, N. M. Prior thereto, and on July 6, 1929, he had suffered an attack of scarlet fever. Subsequently, in early December, 1929, he tendered defendant proofs of disability in connection with claim for disability benefits under the policy. Pulmonary tuberculosis, said to have commenced with scarlet fever on July 5, 1929, was given in the proofs signed by plaintiff as cause of the disability. The physician's report submitted as a part of the proofs, signed by Dr. W. A. Gekler of Albuquerque, superintendent of Albuquerque Sanatorium, recited as the history given by plaintiff at time of first consultation on September 3, 1929, "Pulmonary tuberculosis beginning April, 1927."

Later, by letter of January 8, 1930, the same Dr. Gekler, in response to an inquiry by defendant, wrote it as follows:

"In reply to your letters of Dec. 11th and Jan. 3rd, wish to state that on entering this sanatorium Mr. Warren gave a history of typical tuberculous symptoms in April, 1927. He stated in his history to us that he was x-rayed at this time and a positive diagnosis of pulmonary tuberculosis was made. Since then he has been in and out of bed at times making some symptomatic improvement, however, there was nothing related in the history to indicate that he was at any time free from cough and expectoration. In July before coming to us he had an attack of Scarlet Fever which produced an empyema, in addition to his pulmonary tuberculosis. He is being hospitalized at the present time for a combination of streptococcic empyema and far advanced active pulmonary tuberculosis, which no doubt, (the latter) dates back to at least April, 1927.

"He is permanently and totally disabled from following a gainful occupation, and as a matter of fact the way things look at present, he is a terminal case.

"Trusting that this will give you the information you desire, I am."

Under date of November 27, 1929, the plaintiff's proofs of disability hereinabove mentioned were completed, consisting of an attending physician's report signed by the aforesaid Dr. W. A. Gekler and insured's statement signed by himself. They were mailed to defendant and received by it in early December, 1929. The semiannual premium due October 5, 1929, was not paid and, prior to receipt by defendant of the proofs of disability, the grace period extending maturity of the premium

for the period of one month had expired. Certain conversations between an unidentified person from the Chicago office of defendant and Mrs. Lillian C. Warren, the plaintiff's wife, touching the claim for disability benefits, are relied upon as an excuse for. nonpayment of this semiannual premium. . The facts pertinent to the claim of waiver or estoppel will be mentioned more in detail in dealing with defendant's contention that estoppel was neither pleaded nor proved.

On February 14, 1930, the defendant, by letters addressed both to the plaintiff and to his wife as beneficiary named in the policy, and received by them in due course of mail, advised each of them that it elected to rescind, and did rescind, the reinstatement of said policy because of the failure of the insured to disclose in his application material facts as to his insurability. The defendant tendered back to insured, by means of a check accompanying the letter to him, the sum of $63.39, representing a return of the amounts received by it on account of premiums and loan interest paid in connection with the policy subsequent to the reinstatement thereof. The letters also notified the insured and the beneficiary that the policy stood lapsed upon the defendant's records for nonpayment of the premium due October 5, 1928, and would be continued as term insurance for one year and 336 days from the date of lapse, or until September 6, 1930. These letters were duly received by the insured (plaintiff) and his wife as she admitted.

The plaintiff, at the time of receiving said letter, was still a patient in Albuquerque Sanatorium at Albuquerque, N. M. He did not testify at the trial, but his wife testifying in his behalf admitted that she discussed with him the matter of the check.

Thereafter, and on July 29, 1930, the check accompanying said letter to plaintiff was presented for collection to First National Bank of Albuquerque, N. M., and paid on August 2, 1930, at New York City by the drawee, Chase National Bank of New York. When presented, the check bore the indorsement of plaintiff by Lillian C. Warren, his wife. From the day of the receipt of said letter of February 14, 1930, and check accompanying same, tendered in connection with the rescission claimed of the reinstatement theretofore granted, until December 8, 1933, the date of filing of plaintiff's complaint herein, the plaintiff neither challenged the claimed rescission nor offered to restore to defendant the amount paid by it on said check, as aforesaid.

Mrs. Warren, the plaintiff's wife, had no express authority from her husband to indorse the check and receive payment thereof. Her act in indorsing and collecting same was without his knowledge or consent. She used the proceeds of said check for support of the family, including her husband, the plaintiff. He had no knowledge, however, that any part of the proceeds was used in his support. Although without knowledge, at the time, of his wife's actions in the premises, within 2 or

3 months thereafter he learned that she had indorsed the check in his name and collected the proceeds thereof. Nevertheless, he remained silent and in no way repudiated or disaffirmed the purported authority reflected by her act.

On July 8, 1933, the plaintiff filed, his complaint with the clerk of the district court of Bernalillo county, seeking recovery of disability benefits of $30 per month commencing with the month ending August 6, 1929. Apparently appreciating the effect of nonpayment of the semiannual premium due October 5, 1929, the complaint alleged that, after plaintiff's illness developed in the month of July, 1929, "the defendant company was apprised of the condition of the plaintiff and of his total disability *before the date upon which another semi-annual premium or payment became due the defendant company.*" (Italics ours.)

Anticipating, likewise, the defense of mutual rescission, the plaintiff further pleaded: "That the defendant in default of its covenant under the terms of said policy, and in disregard thereof, and without any justification or excuse, and without any fault or cause upon the part of the insured, elected to repudiate said contract and to attempt to rescind same, and has neglected, failed and refused to comply with the provisions of said policy and has neglected, failed and refused to pay to this plaintiff any sum whatsoever for or on account of his disability as hereinabove alleged."

All of the material allegations of the complaint, except the matter of plaintiff's and defendant's residence, the due issuance of the policy, and a statement of certain of its provisions, were met by a general denial on the part of defendant.

When the evidence was all in, the defendant moved for a directed verdict, assigning in substance the following grounds, to wit: (1) That the evidence disclosed, as a matter of law, mutual rescission of the reinstatement of the policy following lapse for nonpayment of semiannual premium due October 5, 1928. (2) That no estoppel was available to plaintiff to excuse nonpayment on October 5, 1929, or within grace period of one month thereafter, of the semiannual premium maturing on the date mentioned (a) because not pleaded; (b) because not proved; payment of said premium being essential to entitle plaintiff to recover.

The trial court denied the motion for directed verdict, submitted the cause to the jury, which found in plaintiff's favor, and judgment was entered accordingly. It is to review that judgment that this appeal is prosecuted.

Upon either of two theories we are well convinced that the trial court should have sustained the motion for a directed verdict interposed by defendant at the close of the case: First, as we view the evidence, mutual rescission of reinstatement of the policy, following default in payment of the premium due October 5, 1928, was accomplished as a matter of law; second, even if

under the pleadings evidence of estoppel was admissible to excuse nonpayment of the premium due October 5, 1929, which we hold it was not, the evidence produced on the issue was insufficient as a matter of law to constitute estoppel.

We turn first to a consideration of mutual rescission. But for one difference in the facts, which we consider overcome by other evidence, it would not be contended that this case is not controlled by the reasoning of the United States Circuit Court of Appeals for the 5th Circuit in Kincaid v. New York Life Ins. Co., 66 F.(2d) 268, 269, and of the Supreme Court of Minnesota in Peterson v. New York Life Ins. Co., 185 Minn. 208, 240 N.W. 659, 80 A.L.R. 180. That difference lies in the circumstance that in the two cases cited the check tendered in return of premiums in connection with the claimed rescission was personally cashed by the payee thereof, the insured in the Kincaid Case, and the beneficiary in the Peterson Case, against each of whom the company at the time of tendering the check asserted the claim of rescission. In the case at bar, however, as disclosed by the recital of the evidence which has preceded, and which may be taken as fairly within the verdict of the jury, the check was made payable to the insured (plaintiff), and, after being retained by him almost 6 months without challenge on his part of the asserted rescission, was cashed by the wife, the beneficiary named in the policy, by an indorsement placed on the back of the check as follows: "Arthur F. Warren by Lillian C. Warren." This difference in the facts, as

we shall demonstrate, does not alter the legal effect of plaintiff's conduct.

In the Kincaid Case the policy carried disability benefit provisions similar to those found in the policy in the case at bar. The policy lapsed for nonpayment of a premium. The insured applied for reinstatement, answering certain questions touching his health. The reinstatement was granted. Thereafter certain premiums were paid by him. He then made claim for total disability. The company replied, asserting false statements in obtaining the reinstatement and notifying him of its election to rescind. It tendered him a check for the amount paid as premiums and interest in connection with and after the reinstatement. The insured denied any false statement, asked the company to withdraw the claim of rescission, and tendered a subsequent premium which the company refused. Correspondence continued, but finally, and prior to his death, the insured, Kincaid, cashed the check. Suit was brought by his widow, the beneficiary, to recover on the policy. Among other things, the court said: "Despite its equitable dress this is only a suit on the policy which anticipates defenses and seeks to reply to them. There is a prayer for an accounting, but the plaintiff is not the personal representative of Kincaid. As nominated beneficiary in the policy, she recovers on its promise to pay her or fails altogether."

Involved in the case was the question whether dividends on the policy were sufficient to protect it beyond date of the lapse on account of which the reinstatement was

sought. After discussing this phase of the case, the court continued:

"Mrs. Kincaid is therefore entitled to recover unless the cashing of the check for $489.75 on June 12th ended her rights under the policy. As to this Mrs. Kincaid is, of course, bound by what her husband did. She indeed was sent a duplicate of the letter which was sent him by the company announcing its position and offering the check. Full liberty to change the beneficiary was reserved in the policy, so that she had no vested rights but was only his appointee to receive the insurance if any should be due at his death. * * *

"The money was tendered as a return of what had been paid by reason of the rescinded reinstatement, but no statement is alleged to have accompanied it to show what items it included. Kincaid contended that the reinstatement was not fraudulent and not rescindable. In finally accepting the money, he necessarily agreed that it was rescinded, for on no other basis would he be entitled to any money from the company. The disability which he claimed would not require the payment to him of anything until a year after June 30, 1931. In taking this money back on June 12, 1931, he must have taken it because of a consent to rescind the reinstatement. But a rescission of the reinstatement did not rescind the policy, which was a distinct contract made nine years before, unless the terms upon which the money was offered made it more clearly a settlement in full of all demands than now appears. The policy contract still stood on its own merits, but unaided by the rescinded contract of reinstatement or by the returned premiums. Kincaid could claim no benefit from those premiums after putting them back in his pocket."

The Peterson Case involved a policy on the life of a wife, with the husband named as beneficiary. It lapsed for nonpayment of a premium, and application for reinstatement, as in the instant case, was applied for and granted. Subsequent premiums were paid until the insured died from tumor of the brain. The evidence clearly disclosed that false statements touching the health of insured had been made in the application for reinstatement. The company, having learned these facts in connection with its investigation of proofs of death, notified the beneficiary of its election to rescind the reinstatement on the ground of misrepresentations, and sent him a check to cover premiums paid and interest thereon from the date of reinstatement of the policy. He cashed the check, and a month later endeavored to return its amount to the company in the form of a certified check, which was refused. In denying his right to recover on the ground that a mutual rescission had occurred, the court said:

"We first consider the appellant's claim that a rescission was effectuated by its letter returning the premiums paid since the reinstatement and by plaintiff's acceptance of those premiums. It sent the premiums and interest to date in the form of a check payable to plaintiff. The check was stamped 'refund of premiums and interest with interest on policy No. 9460577, Peterson dec'd.'

The letter with which the check was inclosed fully explained the defendant's position in regard to the policy. It set out its claim that the reinstatement had been obtained by misrepresentation of matters material to the risk, and that it elected to rescind on that account. It transmitted the check to return the premiums and interest to date. It also set out its position that the policy stood lapsed, and that nothing was payable thereon. The letter was clear and easily understandable. Plaintiff does not claim to have misunderstood it. He consulted his banker and cashed the check, as he says, because he 'needed the money bad.' True, he says he did not intend to forego his claim for $1,000 upon the policy, but this does not change the effect of what he did. C.J. vol. 1, p. 562; Truax v. Miller, 48 Minn. 62, 65, 50 N.W. 935. That instead of consulting his lawyer he consulted a banker and may have been wrongly advised in consequence does not relieve him. Fidelity & Casualty Co. v. Gillette-Herzog Mfg. Co., 92 Minn. 274, 277, 99 N.W. 1123. As in the case of accord and satisfaction, it was not necessary that the letter state in so many words that the check, if accepted, must be accepted in full of defendant's liability. If the tenor of the letter made it clear that the purpose of the payment was to effect a rescission, it would be equally effective. 1 C.J. p. 557, note 53. Nothing could be plainer than that, if plaintiff accepted the return of the premiums, he consented to and effectuated a rescission by consent. He could not possibly believe that he was entitled to both the returned premiums and

the insurance which the premiums had been paid to obtain. When he cashed the check transmitted for the purpose stated in the letter, the minds of the parties met, and the rescission became complete. An effort a month later to retract was ineffectual. Beck Electric Const. Co. v. National Cont. Co., 143 Minn. 190, 173 N.W. 413. The case differs from Tupper v. Insurance Co., 156 Minn. 65, 194 N.W. 99, where plaintiff had an undisputed right to the money paid her. Here plaintiff had no right to the returned premiums if he also had a right to the insurance money."

Tully v. New York Life Ins. Co., 228 App. Div. 449, 240 N.Y.S. 118, is another case of mutual rescission within the period of contestability, involving the policy itself rather than a reinstatement thereof. The opinion is based upon reasoning similar to that found in the Kincaid and Peterson Cases.

As already said, the reasoning of these cases is decisive of the rights of the parties to this appeal, unless the mere fact that the wife, the beneficiary, cashed the check under the circumstances shown so differentiates it as to direct a different result. The plaintiff points to that very circumstance as distinguishing the Kincaid and Peterson Cases from the case at bar. However, other facts appear which put this case in line with them.

The plaintiff received and retained the check for the period of almost 6 months without challenging the claimed right of rescission. Whether that silence was due

to a belief then entertained by him that the claimed right could not successfully be challenged is beside the point. However, in view of statements appearing in the proofs of disability and the letter reaching defendant from the physician signing the proofs, there is nothing to suggest any want of good faith on defendant's part in claiming the rescission as it did.

"Where a party even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent." 13 C. J. 601, § 624, under title "Contracts." See, also, Ralya v. Atkins, 157 Ind. 331, 61 N.E. 726; Barquin v. Hall Oil Co., 28 Wyo. 164, 201 P. 352, 202 P. 1107; Lynch Davidson & Co. v. Denman Lumber Co. (Tex.Civ.App.) 270 S.W. 225.

■ We consider here applicable a principle frequently applied in cases of accord and satisfaction that retention for an unreasonable length of time of a check tendered in full settlement of a disputed or unliquidated demand amounts to an election to treat it as such and estops the payee to assert the contrary. 1 C.J. 563, § 87, "Accord and Satisfaction"; 1 R.C.L. 196, § 32, "Accord and Satisfaction"; 3 Williston on Contracts, § 1854, pp. 3175 to 3178; Willis v. City National Bank (Tex.Civ.App.) 280 S. W. 270, writ of error denied by Supreme Court; Day-Luellwitz Lumber Co. v. Serrell, 177 Ill.App. 30; and case notes, 34 A.L. R. 1058, supplemented 75 A.L.R. 926; L.R. A.1918C, 161; Ann.Cas.1915A, 963.

"And when a check is sent upon the condition that it be accepted in full payment of a disputed claim, there is, as a general rule, but one of two courses open to the creditor, either to decline the offer and return the check or to accept it with the condition attached. The moment the creditor endorses and collects the check, knowing it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement." 1 R.C.L. 196, § 32.

"Where a check is sent in full settlement of a disputed or unliquidated demand, delay for an unreasonable length of time to return the check will amount to an election to treat the payment as a full settlement. It is the duty of the creditor, within a reasonable time after being informed of the condition on which the payment was made, to notify the debtor whether or not his offer of settlement is accepted, and if not to return to him the money received. What in a given case would be a reasonable time depends upon all the facts and circumstances thereof." 1 C.J. 563, § 87.

In 3 Williston on Contracts, § 1854, pp. 3175 to 3178, the author states: "A few jurisdictions in the United States have sustained the creditor's contention that the question of his assent to the debtor's proposition is to be dealt with as one of fact. But the great weight of authority in the United States is to the contrary. It is said that the acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered. A retention of a check, even for an unreasonable length

of time has not always been given this effect, *but as the creditor has no more right to retain the check an unreasonable time than he has to cash it, unless he accepts it as full satisfaction, there seems no propriety in distinguishing the two situations.*" (Italics ours.)

In Day-Luellwitz Lumber Company v. Serrell, supra, the Illinois Court of Appeals said:

"In our opinion the court below, with this state of things clearly established, might consistently have instructed the jury peremptorily for the plaintiff or for the defendant, accordingly as he held this three months and a half a reasonable or an unreasonable time for the retention of the draft. We think he should have held it an unreasonable time and instructed the jury therefore peremptorily for the defendants. We hold it an unreasonable time under the circumstances of this case. To hold it reasonable would be against all the analogies of the law of negotiable paper. A check or draft of this sort is not intended for indefinite circulation or hoarding. It is supposed to be negotiated promptly or presented promptly. If held but a short time even, the holder incurs the risk of the intermediately accruing insolvency of the drawee and drawer. The neglect of the defendant in error to return or act in any way on the draft was equivalent in its effect on the plaintiff in error to cashing it, holding the money for three months or more and then offering to return it. The defendant in error must be held to have accepted the draft in payment of its account against the plaintiff in error, and the jury should have been so instructed.

"The judgment of the Municipal Court is therefore reversed."

The analogy presented between mutual rescission under facts similar to those present in the case at bar and accord and satisfaction, where based upon the cashing or retention of a check for less than amount claimed, tendered in full settlement of a disputed account, was not overlooked in the Peterson and Tully Cases, supra. Indeed, the analogy was noted and drawn upon in deciding those cases.

In the opinion last quoted from above the court intimates the rule might not be the same if the sender's own check or draft, instead of bank draft or check of third person, as in the case decided, were sent. The reason suggested for the difference is, if the sender's own check or draft be employed, the money is not withdrawn from his account, and he is not out its use by a mere retention of the check. The transparency of the suggested distinction is obvious. In the one case as well as in the other the sender, if he would himself avoid repudiating the claimed rescission or settlement, must at all times deny himself use of the money by holding it in his account to meet the check tendered when presented.

We do not overlook the fact that at the time this claim of rescission and the tendered check reached plaintiff, about the middle of February, 1930, he was a patient

in Albuquerque Sanatorium at Albuquerque. He had entered there, a very sick man, on September 3d, preceding. According to the testimony of one of his attending physicians, he was critically ill for a period of at least 6 months, but had made some symptomatic improvement before leaving the sanatorium in the summer of 1930. The check was, received almost 6 months after he entered the sanatorium, and was retained for approximately that same period before being cashed by the wife, who admitted having discussed the check with him during the period of its retention. That plaintiff's condition had improved to the point where he could give attention to business matters is plainly indicated by comment of his counsel to the court in seeking to exclude any testimony of the wife which might support an implication of authority or agency on her part in cashing the check. Counsel stated: "The difference is this, she acted in Chicago when his condition was such that he couldn't possibly act; the doctors and she have both said he made a recovery in 1930 and was conscious and in condition where in a matter of that kind he could have taken care of it himself."

If, as characterized by his own counsel, the evidence disclosed plaintiff's condition to be such that he could have acted for himself rather than through his wife in indorsing and cashing the check, had such been his wish, that condition would also enable him to direct its return if not accepting it with the condition attached.

But, so far as plaintiff was concerned and as reflecting his state of mind, the period of retention did not end with the cashing of the check by his wife. Her testimony (he did not testify) shows him to have been without knowledge that she had cashed the check for about 3 months after she had done so. During such period, for aught he knew and as he could only have believed, the check was still retained subject to return to defendant, if the condition accompanying its receipt were not accepted.

We conclude that retention of the check for the period here shown in the face of the notice accompanying same without challenge of the right claimed accomplished mutual rescission.

If doubt exists on the correctness of this conclusion, and we entertain none, it is resolved in favor of rescission as an accomplished fact, when we consider an additional circumstance. Within 2 or 3 months after the wife had indorsed and cashed the check, she informed her husband (plaintiff) of what she had done. And yet for 3 years and 3 months he remained silent and did nothing to repudiate the authority which she had presumed to exercise in his name and behalf. His institution of the present suit was the first challenge of her act.

In Restatement of the Law of Agency, § 94, a rule is stated which applies here. The text states: "An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it."

Commenting on the rule, it is further said: "Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent may be inferred. Such inference may be drawn although the purported principal had no knowledge that the third person would rely upon the supposed authority of the agent; his knowledge of such fact, however, coupled with his silence, would ordinarily justify an inference of assent by him. Whether or not such an inference is to be drawn is a question for the jury, *unless the case is so clear that reasonable men could come to but one conclusion.*" (Italics ours.)

Where, as here, the agency of the wife throughout in handling his insurance claim was such as to have warranted a belief that her act in indorsing and cashing the check was authorized, especially in view of the close relationship existing between husband and wife, the duty to disaffirm upon learning of the unauthorized act was even stronger than would otherwise have been the case.

Ordinarily, whether mutual rescission has occurred is a question for the jury. But, where the facts are admitted or clearly established, it may become a question of law for the court. 2 Black on Rescission and Cancellation (2d Ed.) § 534, p. 1312. Viewing the evidence as a whole, we think it supports but one reasonable conclusion, and that is that the plaintiff acquiesced in the rescission claimed and may not now dispute it as an accomplished fact.

If the policy lapsed for default in payment of the premium due October 5, 1929, the plaintiff was likewise not entitled to recover. Admittedly the premium was not paid when due nor within the grace period thereafter which expired November 5, 1929. Unless the waiver or estoppel relied upon to excuse payment be sufficient, this ground of the motion for directed verdict was good and should have been sustained. The defendant disputes sufficiency of the excuse for two reasons: First, because estoppel was not pleaded; and, next, because the evidence relied on fails to prove estoppel.

Treating these points in the order of their statement, we find plaintiff's reliance in the pleadings for proof of estoppel rests upon the following allegations, to wit: "That after the illness and malady of plaintiff developed in the month of July, 1929, as aforesaid, the defendant company was apprised of the condition of the plaintiff and of his total disability before the date upon which another semi-annual premium or payment became due to the defendant company. That upon receipt of such notice, in accordance with the terms of said policy of life insurance, it became the duty of the defendant company to pay to the plaintiff the sum of Thirty Dollars ($30.00) per month for each and every month during which the plaintiff remained wholly and totally disabled."

Main reliance is placed upon the second and closing sentence of the allegations just quoted. The plaintiff admits that, in alleging the duty on defendant to pay the monthly benefits after becoming apprised of plaintiff's condition, he was pleading a conclusion. He contends, nevertheless, that, in the absence of a motion to make more definite and certain, the defendant opened the case to admission of any evidence calculated to show existence of the duty alleged.

We are not impressed with this argument. It was essential that plaintiff allege compliance with conditions precedent to a right of recovery, such as furnishing proofs of loss, 33 C.J. 85, payment of premiums, Id., 86. The allegations relied upon to support proof of an estoppel either represents plaintiff's fulfillment of this duty of alleging performance of a condition precedent or performance is nowhere alleged.

Unquestionably, such seems the purpose of these allegations. The defendant should not be penalized for recognizing and treating them as what on their face they appear to be. It was not unobservant in failing to guess that this essential allegation of performance of a condition precedent had, buried within its meaning, a plea of estoppel.

It seems obvious from a reading of the allegations relied upon that, in connection with the plea of having furnished proofs of disability, the plaintiff also invoked, by allegation, a plea of waiver of the premium due October 5, 1929, under the provisions of the policy. The policy carried a waiver of premium clause as follows: "Waiver of Premiums.—The Company will waive payment of any premium falling due after approval of such proof of disability and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the Policy, but if due after receipt of said proof will, if paid, be refunded upon approval of such proof."

It is seen that the only premium to be refunded, if paid before approval of proofs of disability, is one due "after receipt of said proof." If paid, it is to be refunded upon approval of the proof. The premium in question, as well as its grace period, had expired before the proofs were even submitted to the defendant.

A plea of waiver of the premium within the express language of disability benefit provisions of the policy is something quite different from a plea of estoppel to assert default in payment of a premium outside of the policy provisions. We need do no more than to cite a statement of the general rule that an estoppel to be relied upon must be pleaded with particularity and precision. 21 C.J. 1247, 1248. We hold the trial court erred in admitting evidence of the claimed estoppel over defendant's objection that such evidence was without support in the pleadings. If this were the only error present in the record, we should feel moved to remand the cause for a new trial.

█ Nor do we consider sufficient the evidence adduced to support estoppel. Mrs. Warren, the plaintiff's wife, following her return to Chicago from Albuquerque, called the Chicago office of the defendant company by telephone, explained his illness, that she had taken him to Albuquerque, and that she wished to make arrangements for collection of disability benefits under his policy. This conversation occurred about September 25, 1929. The premium was due October 5, 1929, and by virtue of a grace provision the policy would not lapse ·for its nonpayment until November 5, 1929.

In response to this telephone call, some unidentified representative from the defendant's Chicago office brought blanks to her home for making proofs of disability. His name she could not recall, and his title, office, and authority remain unexplained. It is what transpired between plaintiff's wife and this representative that is relied upon as estoppel. Touching payment of the current premium, the following occurred, to wit:

"Q. What if any conversation did you have with him as to the payment of the fall premium on this life insurance? A. We talked about that, I asked him about it, he said perhaps I should take care of that. * * *

"Q. Now, did you at that time have any conversation or did you thereafter have any conversation with reference to the premium which was due in the fall, the 5th of October? A. Yes, we did.

"Q. All right, what was the substance of that? * * * A. I talked to him about it; he said he thought I ought to take care of the October premium if I could, he said it would be all right, and he assured me several times everything would be taken care of, and he took the blanks with him. * * *

"Q. After that conversation, did you refrain from making any further effort to raise the money to pay the premium because of what the agent had said to you at that time? A. Yes, I felt convinced that everything would be all right."

All of this testimony went in over objections interposed by the defendant. Waiver or estoppel with respect to the premium involved must be based upon it, if either exists.

The policy carried the following provision: "No agent is authorized to waive forfeitures, or to make, modify or discharge contracts, or to extend the time for paying a premium."

Twice the witness quotes this representative as saying to her that the October premium should be taken care of. First: "He said perhaps I should take care of that"; next: "He said he thought I ought to take care of the October premium if I could, he said it would be all right," and assured her several times, she testified, that everything would be all right. Upon the faith of these statements from an unnamed and unidentified person sent from defendant's Chicago office in response to a telephone call from her, Mrs. War-

ren says she refrained from further effort to pay the October premium.

We think this testimony is insufficient to show either waiver or estoppel. Smith v. New York Life Ins. Co., 26 N.M. 408, 193 P. 67. Neither can be predicated upon supposed authority, for she had never seen the man before and could not even recall his name. And, if his duties related to the subject-matter of her telephone call, a reasonable assumption, they were concerned with claims under policies. Except for the bald assertion of this representative regarding the current premium, testified to by Mrs. Warren, and made after twice admonishing her that he thought it ought to be paid, that "it would be all right," and that "everything would be all right," there is no showing that he had any authority whatever to waive or extend the time for paying a premium, or that his duties had anything to do with premium payments. 32 C.J. 1327, § 581, "Insurance." Nor can estoppel be rested upon any previous course of dealing, for she had never seen him before. It would be a dangerous doctrine that would erect estoppel on such facts.

■ As is to be observed from reading the provision for waiving premiums during disability, hereinabove quoted, the defendant agrees to waive such premiums only as fall due after approval of the proof of disability. Even though the proofs have been submitted, the premium still must be paid. But, if due and paid aft-er proofs are received, but before approval, it is to be refunded. This provision was never brought into operation because maturity of the premium was reached and grace period had expired before proofs were submitted. The proofs were rejected, and notice of defendant's election to rescind followed as hereinabove shown.

It follows from what has been said that the judgment appealed from must be reversed. The cause will be remanded, with a direction to the trial court to set aside its judgment and enter judgment for the defendant, with its costs.

HUDSPETH, BICKLEY, and BRICE, JJ., concur.

ZINN, Justice (specially concurring).

I cannot agree with the majority on the first point decided. Appellant first contends that the facts prove there was a rescission of the insurance contract between the parties as a matter of law to be decided by the court, and therefore the case should not have been submitted to the jury.

That there was no actual mutual rescission between the insured and the company is apparent from the facts. He did not cash the check. He did not expressly consent to the rescission. Therein lies the distinction between this case and the case of Kincaid v. New York Life Insurance Co. (C.C.A. 5th) 66 F.(2d) 268, which

the appellant cites as authority to support its theory. In the Kincaid Case the insured cashed the check, thus expressly assenting to the rescission.

In the instant case we must find rescission, if at all, in agency express or implied. This I cannot do. One of the parties to a contract cannot rescind the contract without the other's express or implied assent. 6 R.C.L. 921. The insurance company, acting alone, could not rescind the contract. It required the assent of the insured.

To concede appellant's contention, we must presume that Mrs. Warren, in cashing the check, was acting as appellee's agent, or, if not his agent, that he later ratified her acts, and in so doing such ratification was as effective to consummate the rescission as though he alone had cashed the check.

The wife, in cashing the check, did not act as the authorized agent of the appellee. The evidence conclusively shows that in cashing the check she did so without the knowledge, consent, or authority of her husband. The jury so found from the facts. A wife is not as a matter of law the general agent of her husband. No presumption is to be indulged as to her agency because of his illness, nor did his illness vest in the wife a general or unlimited authority as to all his affairs. Mrs. Warren was not the agent of appellee by virtue of the power which the wife has, in certain cases, to charge her husband, in procurement of necessaries for herself or the family.

It may be usual for a wife to purchase food for the family and bind the husband in contract for the purchase price. However, it is not usual for a wife to cash a check payable to the husband and thereby rescind the husband's insurance contract. No implication can arise from the circumstance that the wife cashed the check. The check in its usual course came back into the hands of the appellant with an irregular indorsement. Appellant should have, upon noticing the irregular indorsement, inquired as to the right, power, and authority of the wife to indorse and cash the check, which act appellant now claims amounts to a rescission. It would be unreasonable and unsafe to extend the powers of a wife to bind the husband by implication or presumption to hold as a matter of law that a wife can cash a husband's check and thereby rescind the husband's insurance contract.

In the leading case of Benjamin v. Benjamin, 15 Conn. 347, 39 Am.Dec. 384, the court said: "A wife, as such, has no original or inherent power to make any contract, which is obligatory on her husband. No such right arises from the marital relation between them. If, therefore, she possesses a power in any case, to bind him, by her contracts made on his behalf, it must be by virtue of an authority derived from him, and founded on his assent—

although such assent may be precedent or subsequent, and express or implied; and this is the light in which such contracts are universally viewed. When such authority is conferred, the relation between them and the consequences of that relation, are analogous to those in the ordinary case of principal and agent. And that she has the capacity to be constituted, by the husband, his agent, and to act as such, equally with any other person, there is no doubt. In Fitz. Nat.Brev. 120. G. the law is thus laid down: 'A man shall be charged in debt for the contract of his bailiff or servant, where he giveth authority unto the bailiff or servant to buy or sell for him: and so the contract of the wife, if he give such authority to his wife, otherwise not.' In Manby v. Scott, 1 Mod. 125, it is said, by Mr. Justice Hyde, that 'a feme covert cannot bind or charge her husband, by any contract made by her, without the authority or assent of her husband, precedent or subsequent, express or implied.' "

Having no power to bind the husband by contract unless he had given his authority or assent, conversely Mrs. Warren could not rescind her husband's contracts. Appellant, who claimed a rescission of the husband's contract of insurance by the wife, failed to show that the husband had given such express assent. I refuse to say as a matter of law that the cashing of the check by the wife was a rescission binding on the husband.

Appellant then must resort to an implied assent or ratification. It is not always easy to determine what amounts to proof of the husband's assent, where it is claimed to be implied as in the instant case. Whatever difficulty there may be in the present case is of that character.

It is a familiar principle of the law of agency that every authority given to an agent, whether general or special, express or implied, impliedly includes in it, and confers on such agent, all the powers which are necessary, or proper, or usual, to effectuate the purposes for which such authority was created. It embraces the appropriate means to accomplish the desired end. Making the proof of loss for appellee did not clothe the wife with any implied power to cash the check and thereby rescind the insurance contract.

Appellant claims that appellee did ratify what was done by his wife in not disavowing her act of cashing the check. It does not seem so. He was not obliged, at his peril, to take steps which might charge her with forgery. The appellant knew, or ought to have known, of the irregular signature. It took no steps to protect itself. Certainly, under the circumstances, there was no ratification as a matter of law. The court did submit to the jury the question in respect to the subject, as a matter of fact, and the jury found against appellant. The minds of reasonable men can honestly and clearly differ on the duty of appellee under the circumstances. The jury differs with the majority view. The trial court differs. I cannot agree. Are we all unreasonable men?

Where reasonable men can differ, the question then becomes one of fact to be determined by the jury. The law is clearly stated in ·Corpus Juris, as follows:

"As to Ratification. Where competent evidence adduced is such that reasonable men could draw different conclusions as to whether or not there has been a ratification of unauthorized acts or contracts, the question is one of fact to be determined by the jury under proper instructions from the court, and it is error to withdraw the case from them by instruction or by direction of verdict. But if there is not sufficient evidence of ratification or if the evidence is such that only one conclusion could be drawn therefrom by reasonable men, the question becomes one of law for the court and should not be submitted to the jury.

"What is a reasonable time within which a principal must object to acts of his agent or be held to have ratified them is ordinarily a question of fact for the jury." 2 C.J. 965 and 966.

It was the province of the jury to determine from the facts whether or not the husband ratified the acts of the wife in cashing the check and, upon discovery of her act, in not disavowing the same. The jury found against appellant. On this point I feel bound by the verdict.

I concur with the opinion of the majority as to the appellant's second contention of error, and am therefore in accord with the result.