2006-NMCA-053

134 P.3d 795

**BUILDERS CONTRACT INTERIORS, INC., Plaintiff–Counterdefendant/Appellee,**

v.

**HI–LO INDUSTRIES, INC., Defendant–Counterclaimant/Appellant,**

and

**Hi–Lo Industries, Inc., Third-party Plaintiff/Appellant,**

v.

**Robert L. Novis, Third-party Defendant/Appellee.**

No. 24,618.

Court of Appeals of New Mexico.

March 16, 2006.

Lastrapes, Spangler & Pacheco, PA, Matthew M. Spangler, Rio Rancho, NM, for Appellant.

Peter Everett IV, Albuquerque, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} In this appeal, we consider whether mere negligence in failing to perform a settlement agreement constitutes a basis in equity to set aside a judgment based on the settlement agreement itself. The conflict here arises in the context of a settlement agreement between Plaintiff Builders Contract Interiors, Inc., its president Third-party Defendant Robert L. Novis (together BCI), and Defendant Hi–Lo Industries, Inc. (Hi–Lo), requiring BCI to pay a settlement amount to Hi–Lo on or before a certain date. The settlement agreement provided that "[t]ime [was] of the essence" and, if the amount was not paid by that date, Hi–Lo was

entitled to file and enter with court a stipulated judgment against BCI. BCI did not pay within the specified time, and Hi–Lo filed the stipulated judgment. The district court set aside the judgment on equitable grounds. Because BCI's justification for failing to pay within the specified time was based on its own negligence rather than mistake, we reverse the district court, thereby upholding the settlement agreement.

## BACKGROUND

{2} BCI, a cabinet subcontractor, purchased cabinets from Hi–Lo on open account. Novis was the guarantor of the account. After conducting business for more than a year, Plaintiff sued Hi–Lo, alleging claims for breach of contract, business interference, interference with prospective contract, and direct business damage. It requested compensatory and punitive damages. It alleged that Hi–Lo had overbilled, delivered substandard cabinets, filed false liens, and engaged in defamatory communications with Plaintiff's customers. Hi–Lo filed a counterclaim and a third-party complaint against Novis. It alleged that BCI had fallen behind on its payments, had exceeded its credit limit, and owed on the open account, plus interest and attorney fees.

{3} The night before trial was scheduled to start, the parties settled the case while represented by counsel. The settlement agreement, signed by the parties, provides that

> 1. BCI shall pay to Hi–Lo the sum of $27,703.00 on or before 5:00 p.m. on October 24, 2003.... Time is of the essence in this Settlement Agreement.
>     . . . .
> 5. In the event BCI fails to timely deliver to Hi–Lo the sum required by paragraph 1 hereinabove, Hi–Lo may file and enter with this Court a full and final Judgment in this matter ... in the form of Exhibit C attached hereto....

The stipulated judgment approved by counsel for the respective parties provides, "Hi–Lo Industries, Inc. is awarded judgment for damages against Builders Contract Interiors, Inc. and Robert L Novis, jointly and severally, in the amount of $75,711.51." BCI did not make the agreed-upon payment on or before October 24. On October 28, Hi–Lo filed the stipulated judgment after it was approved by the district court. BCI then delivered Hi–Lo a cashier's check in the amount of $27,703 on October 31. Hi–Lo did not accept the late payment and so informed BCI by letter.

{4} On November 12, BCI filed a motion to set aside the stipulated judgment. The district court granted BCI's motion, finding that "[i]t would be unconscionable to allow the Judgment to stand."

## EVIDENCE OF THE SETTLEMENT AGREEMENT

{5} In its answer brief, BCI points out that the settlement agreement was never placed in evidence before the court. However, BCI's motion to set aside is founded on the existence of the settlement agreement. Hi–Lo attached a copy of the settlement agreement to its response to the motion. At the hearing on the motion, the district court stated that it had read the submissions of the parties. Both parties addressed the settlement, and Hi–Lo did so very explicitly. BCI did not raise any objection or argue, in any way, that the court could not consider the settlement agreement. The fact that the court ruled "shortly after" Hi–Lo's counsel completed his argument does not excuse BCI from alerting the court to any defect in the proceeding. We will not address this argument made for the first time on appeal. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*, 1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855.

## INAPPLICABILITY OF EQUITY TO CHANGE PARTIES' AGREEMENT

{6} BCI relied on mistake in the district court in seeking to set aside the stipulated judgment. Novis claimed that he had "the mistaken understanding" that payment was not due until October 31, rather than October 24. The district court thereupon set aside the stipulated judgment on equitable grounds, finding that "[i]t would be unconscionable to allow the Judgment to stand." Because the district court's finding of unconscionability depends on a showing of mistake, we analyze the district court's ruling based on BCI's claim of mistake. Whether the district court was permitted to exercise

its discretion for mistake on this set of facts presents a question of law. *United Props. Ltd. v. Walgreen Props., Inc.,* 2003–NMCA–140, ¶ 7, 134 N.M. 725, 82 P.3d 535 ("The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law...."). If the district court was permitted to do so, we then review the district court's exercise of its equitable power for abuse of discretion. *Id.* ("[T]he issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion.").

{7} We begin our analysis by recognizing and enforcing the strong policy of favoring settlement agreements. *See Navajo Tribe of Indians v. Hanosh Chevrolet–Buick, Inc.,* 106 N.M. 705, 707, 749 P.2d 90, 92 (1988) (discussing the policy of enforcing settlement agreements). Courts look favorably when parties resolve their disputes, and, as a result, hold such agreements in high regard and require a compelling basis to set them aside. *See Marrujo v. Chavez,* 77 N.M. 595, 599, 426 P.2d 199, 201 (1967); *Gonzales v. Atnip,* 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.App.1984). A lack of certainty of contract would be contrary to the policy favoring settlement because it would promote additional litigation with regard to the terms of the settlement agreement. Further, as in *United Properties,* we do not use equitable principles "to save a party from the circumstances it created." *United Props. Ltd.,* 2003–NMCA–140, ¶ 31, 134 N.M. 725, 82 P.3d 535 (internal quotation marks and citation omitted). BCI freely entered the unambiguous settlement agreement with knowledge of its terms. Unless there is "an affirmative showing of mistake, fraud or illegality," "the fact that some of the terms of [an] agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable." *Smith v. Price's Creameries,* 98 N.M. 541, 545, 650 P.2d 825, 829 (1982).

{8} Because a settlement agreement is a species of contract, we also recognize and give effect to the intersecting "strong public policy of freedom to contract" that has been enforced in New Mexico.

*State ex rel. Udall v. Colonial Penn Ins. Co.,* 112 N.M. 123, 126, 812 P.2d 777, 780 (1991) (internal quotation marks and citation omitted). Our courts have consistently enforced clear contractual obligations. *United Props. Ltd.,* 2003–NMCA–140, ¶ 12, 134 N.M. 725, 82 P.3d 535. *See Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 31, 123 N.M. 526, 943 P.2d 560 ("Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits. When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves.") (citation omitted). We will allow equity to interfere with this consistency only when "well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality" justify deviation from the parties' contract. *Id.; see Winrock Inn Co. v. Prudential Ins. Co. of Am.,* 1996–NMCA–113, ¶ 36, 122 N.M. 562, 928 P.2d 947 ("In the absence of fraud, unconscionability, or other grossly inequitable conduct, New Mexico courts do not have discretion ... to interfere with contractual rights and remedies which go to the heart of the bargain.").

{9} In *United Properties,* we addressed the type of mistake that applies in the context of "freely negotiated bargains." *United Props. Ltd.,* 2003–NMCA–140, ¶ 30, 134 N.M. 725, 82 P.3d 535. We stated that a "mistake within the meaning of equity is a non-negligent but erroneous mental condition, conception, or conviction induced by ignorance, misapprehension, or misunderstanding, resulting in some act or omission done or suffered by one or both parties, without its erroneous character being intended or known at the time." *Id.* (internal quotation marks and citation omitted). In that case, a lessee forgot to provide written notice of its intent to renew a lease by a specified date. *Id.* ¶ 4. It sent notice the day after the lessor notified it that the date had passed, and the lessor rejected the notice. *Id.* In those circumstances of a commercial lease, we held that the lessee was negligent such that its mistake did not justify equitable relief and that "[f]orgetfulness is not the

equivalent of a mistake." *Id.* ¶ 30 (internal quotation marks and citation omitted).

■ {10} BCI's basis for missing its deadline shows its negligence. In his affidavit, Novis states that he had a mistaken understanding of the date the payment was due, that the time of year was extremely busy for BCI, and that it was "a completely inadvertent mistake" on his part. He does not point to any "clerical error or technical mix-up," as he argues on appeal. *See Brown v. Trujillo,* 2004–NMCA–040, ¶ 21, 135 N.M. 365, 88 P.3d 881 (noting that a "clerical error or technical mix-up" may enable a court to equitably grant a debtor an extension of the statutory redemption period). In *United Properties,* we stated: "Negligently and inadvertently omitting to perform a duty is far different than to omit it through mistake or accident." *United Props. Ltd.,* 2003–NMCA–140, ¶ 30, 134 N.M. 725, 82 P.3d 535 (internal quotation marks and citation omitted). We cannot characterize Novis' inadvertence as non-negligence.

{11} BCI argues that *United Properties* is distinguishable on its facts because it involves an extension of a commercial lease in which there was "quite late" notice. But the foundation for our opinion in *United Properties* applies with full force in this case. Our focus in both cases is the freedom of parties to enter into a clear agreement to cover their affairs without interference from the courts. Parties must be able to rely on the certainty of their voluntary, arm's-length relationships set forth in the contract in their business dealings. *See Colonial Penn Ins. Co.,* 112 N.M. at 126, 812 P.2d at 780; *United Props. Ltd.,* 2003–NMCA–140, ¶ 31, 134 N.M. 725, 82 P.3d 535. BCI does not argue that the settlement agreement was ambiguous. Not only are the terms clear, the agreement also makes time "of the essence." Equity does not apply to save BCI from its negligence. The district court erred as a matter of law when it found that Novis' negligence, characterized as mistake, gave rise to unconscionability in the contract.

## ABSENCE OF ACCORD AND SATISFACTION

■ {12} BCI additionally argues that Hi–Lo should be held to have accepted its untimely tender of the settlement amount because Hi–Lo did not return the cashier's check. In *Warren v. New York Life Insurance Co.,* 40 N.M. 253, 58 P.2d 1175 (1936), cited by BCI, our Supreme Court, applying a principle used in cases of accord and satisfaction, stated that when a creditor receives a check "in full settlement of a disputed or unliquidated demand," the creditor must notify the debtor whether the offer of settlement is accepted within a reasonable time and return the amount received if it is not accepted. *Id.* at 261, 58 P.2d at 1180 (internal quotation marks and citation omitted). The Court stated that reasonableness of the time period depends on the circumstances of each case. *Id.* In *Miller v. Montgomery,* 77 N.M. 766, 427 P.2d 275 (1967), the Court held that a creditor who gave a cashier's check to counsel to bring a lawsuit on the claim and who brought the action within five weeks of receipt of the check acted within a reasonable period of time and that there was no accord and satisfaction precluding the creditor from bringing the action. *Id.* at 768–69, 427 P.2d at 276–77.

{13} The district court did not rule on this issue. We nevertheless conclude that Hi–Lo is not foreclosed from bringing its claim in this action. Notably, Hi–Lo did not bring any separate action on the debt but merely filed the stipulated judgment already approved by BCI's counsel. Then, it promptly, within eleven days, informed BCI that it was not accepting the check. It informed the court and BCI in its response to the motion to set aside that it would bring the check to the hearing on the motion. Hi–Lo's counsel informed the court at the hearing that he had the check. The district court told Hi–Lo's counsel at the hearing that "Your client can go ahead and negotiate that check now.... I understand why it was unwilling to do so earlier." Because of Hi–Lo's appeal, the matter has been pending since that time. Hi–Lo did not engage in any unreasonable delay.

## CONCLUSION

{14} Because the district court did not have the equitable authority to alter the settlement agreement of the parties for BCI's negligence, we reverse the district court's

order setting aside the stipulated judgment and order the judgment reinstated.

{15} IT IS SO ORDERED.

WE CONCUR: IRA ROBINSON, and MICHAEL E. VIGIL, Judges.