No. 16,214.

EQUITABLE LIFE INSURANCE COMPANY OF IOWA
*v.* VERPLOEG.
(227 P. [2d] 333)

Decided January 29, 1951.

Mr. Phineas M. Henry, Mr. L. Ward Bannister, Mr. H. Gayle Weller, for plaintiff in error.

Messrs. Phelps & Phelps, Mr. Robert L. Gee, for defendant in error.

*En Banc.*

Mr. Chief Justice Jackson delivered the opinion of the court.

Plaintiff in error insurance company, which will herein be designated as insurer, issued three policies, each in the face amount of $2,000, on the life of Dr. Ralph H. Verploeg, to whom we will hereinafter refer as "insured." All three policies contained a disability clause waiving payment of premiums in the event of disability arising out of either sickness or accident and also providing for monthly payments of $20.00 (or a total of $60.00 for the three policies) during the period of disability. The concluding paragraph of the printed form is entitled "Discontinuance of Disability Benefits" and, inter alia, has the following provisions for termination of disability benefits: "(b) Upon default in the payment of any premium required under this policy; or (c) In the event that the insured shall engage in military or naval service in time of war, or as a civilian shall engage in Red Cross service or other relief work in connection with actual warfare." One policy contained an additional clause reading: "or shall participate in aeronautic or submarine operations; * * *."

Insured, with a major's commission in the Medical Corps of the United States Army, was ordered to active duty on August 12, 1942. Insurer had no notice of this order at the time. As soon as it learned of these facts, it

wrote, on July 27, 1945, to insured, who was still in the army, notifying him that the disability benefits had been terminated as of August 12, 1942, on the three policies because of his having engaged in military service in time of war, and enclosed check payable to insured in the amount of $41.65 "representing the refund due you of the unearned premiums for these [disability] benefits from that date." The check contained on its face such a statement of its purpose. Insured seems to have held the check for over four months, and then endorsed and cashed it. He returned to civilian life in February 1946. In May of that year he wrote to the main office of the company applying for reinstatement in respect to the disability clause. This request was denied by insurer. Later in that year insured's counsel began correspondence with insurer which culminated in this suit for a declaratory judgment. In a trial to the court, with most of the facts stipulated, judgment was entered for insured. Insurer was ordered to reinstate the disability provisions in insured's policies upon his paying the proper premiums. Insurer here seeks reversal of the judgment, and files three specifications of points, two of which we discuss. Before proceeding, it should be noted that the ordinary life provisions of the policies remain in full force and effect, and insured has continued to pay the premiums as specified therein.

1. The first specification reads: "1. The entry of the policyholder into military service terminated the disability benefit provisions as provided by the condition of the policies that these provisions should terminate in the event that the insured shall engage in military or naval service in time of war."

The position of insured is that the phrase "engage in military or naval service in time of war" means "to engage the enemy in battle;" that insured was, by the nature of his profession and geographical location, not so engaged. His assignments limited him to camps in the states and in the territory of Hawaii. Counsel further

argue that, in any event, if such is not the case, at least the clause is subject to two interpretations and therefore is ambiguous. They then invoke the rule that any ambiguity should be resolved against the insurer and in favor of the insured.

We do not agree with counsel either in their interpretation of the policy provisions or in their contention that there is justification for application of the rule where ambiguity exists. *North American Acc. Ins. Co. v. Cochran*, 74 Colo. 515, 517, 223 Pac. 28; *Standard Life and Acc. Ins. Co. v. McNulty*, 157 Fed. 224.

█ We believe counsel are in error when, at the beginning of their argument, they cite definitions of the word "engage" where it is used as a transitive verb having an object. In the instant case it clearly is an intransitive verb having no object. The federal court in this jurisdiction has adopted the following definition of the word that seems proper and adequate in its application to this case. " 'Engage,' is defined in volume 3 of Words and Phrases, Third Series, at page 258, as follows: ' "Engage" means to take part in or be employed in, however the employment may arise;' and at page 259 as follows: 'To "engage" is to embark in a business; to take a part; to employ or involve one's self; to devote attention and effort.' The word 'engage' connotes more than a single act or a single transaction; it involves some continuity of action." *Head v. New York Life Ins. Co.*, 43 F. (2d) 517, 520; CCA 10th, 14 Words & Phrases (Perm. ed.), p.p. 590, 597. This definition was subsequently approved and adopted in *Day v. Equitable Life Assurance Society*, 83 F. (2d) 147 (C.C.A. 10th Cir.).

Counsel for insured argue for an interpretation of this provision that would create ambiguities rather than dispel them. Here the contract makes the distinction between military and civilian status which terminates the disability provision when the insured abandons his status as a civilian for the military.

The succeeding clauses, we believe, only serve to em-

phasize that the distinction lies in *status*, and not in character of military service, when provision is made for termination of the disability not only when "the insured shall engage in military service in time of war," but also when he "as a *civilian* shall engage in Red Cross Service or other relief work in connection with actual warfare, or [as is additionally provided in one policy] shall participate in aeronautic or submarine operations." Counsel for insured emphasize the words "in connection with actual warfare," and would apply them to the whole paragraph, whereas grammatically and actually those words modify, and are therefore limited to, "Red Cross Service or other relief work." It seems clear to us that here is a provision for termination of the disability clause in a policy, (1) when insured ceases to be a civilian by entering the military service, and (2) when, even as a civilian, he shall engage in Red Cross service or other relief work in connection with actual warfare, or shall participate in aeronautic or submarine operations.

It is to be noted that, in connection with a provision for termination of the coverage when a certain condition occurs, there is a provision as well for the termination of payment of premiums. This is not a mere limitation of risk written into a policy providing continuing coverage, but a *cessation* of coverage upon the happening of a certain condition. This distinction we believe applies in the various cases cited by counsel for insured. Where there is a provision for termination of liability in the event insured engages in military service, recovery by insured beneficiary has been denied in *Wolford v. Equitable Life Ins. Co.*, 162 Pa. Super. 259, 57 A. (2d) 581. And counsel for insured have cited no similar case to the contrary. The cases upon which counsel rely appear to be the type in which, in its policy, insurer undertakes to *limit* (but not to terminate) the coverage by specifying that the latter shall not be liable where death occurs as the result of the insured being engaged in military

service. In these so-called result cases some jurisdictions tend to extend the coverage to those situations where insured, although in the military service, has suffered death while at home on a leave or a furlough, and under circumstances similar to which he could normally have been exposed while in civilian life. See, 19 Rocky Mountain Law Review 242.

It is pertinent here to observe that in the cases upon which counsel for insured rely the *death* of the insured already has occurred, and each court has rendered its decision in favor of the beneficiary based upon the particular circumstances resulting in the *death* of each insured. In the instant case the insured is *alive,* and asks for a declaratory judgment construing his rights. The very method of studying the circumstances under which death actually occurred applied in the cases upon which he relies, would seem to justify the denial of such a declaratory judgment as wholly premature and unwarranted.

2. Insurer's second specification reads: "The acceptance and retention of the premium refund by the plaintiff was a recognition that the disability benefit provisions had terminated or constituted an agreement that they were rescinded."

Insured testified that he waited from July 27, 1945, until December 4, 1945, to cash the check for $41.65 which represented a refund of premiums which had been paid on the disability benefit provisions between August 12, 1942, when insured entered the service, and July 27, 1945, when the insurer, having become aware of insured's entry into military service, notified him that the disability benefit provisions had been terminated at the earlier date. Insured stated he held the check because he was not satisfied, but he did not give the exact ground for his dissatisfaction. During most of the period that he held the check, and at the time he cashed it, insured was under retirement from the army service as physically incapacitated. He testified that he cashed the refund

check only after being advised that the cashing would have no bearing on the company's financial settlement with him. He stated this advice was given by an insurance friend, who was not connected in any way with the insurer in this case. He appears to have cashed the check in his home city of Denver, where he had ample opportunity to consult with his associates or attorneys. Insured made no payment of premiums on the disability portions of the policies thereafter, and, as already noted, in May 1946 applied for reinstatement in respect to the disability clause. In October 1946, insured's attorney informed insurer that the insured offered to repay the amount of the refunded premiums.

We believe that, under the facts as disclosed, there has been a rescission of the disability benefits in the policies in dispute. As stated in *Peterson v. New York Life Ins. Co.*, 185 Minn. 208, 240 N.W. 659, 80 A.L.R. 180: "Nothing could be plainer than that if plaintiff accepted the return of the premiums he consented to and effectuated a rescission by consent. He could not possibly believe that he was entitled to both the returned premiums and the insurance which the premiums had been paid to obtain. When he cashed the check transmitted for the purpose stated in the letter, the minds of the parties met and the rescission became complete. An effort a month later to retract was ineffectual."

In *Warren v. New York Life Ins. Co.*, 40 N. M. 253, 58 P. (2d) 1175, "The plaintiff received and retained the check for the period of almost six months without challenging the claimed right of rescission." The court quoted from 13 C.J. 601, section 624, under the title "Contracts," as follows: "Where a party even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent." See, also, 17 C.J.S., Contracts, §389. The court then concluded: "That retention of the check for the period here shown in the face of the notice accompanying

same without challenge of the right claimed accomplished mutual rescission."

In the instant case there was not merely a retention of the check for over four months, but an endorsement and negotiation of it, and after that a period of over five months ensued before insured petitioned for reinstatement under the disability provisions. This latter act would seem again to confirm the fact that insured knew, and recognized, that the disability provisions were no longer effective. In the meantime he had continued to pay ordinary life premiums on the policies, while no payments were being made on account of the disability provisions. We believe that the instant case presents an even stronger example of rescission than the authorities cited above or those cited in 152 A.L.R. 105.

For the two reasons set forth in this opinion, the judgment is reversed.