## No. C-529

## Peronelle Burnford v. James C. Blanning, Jr.

(540 P.2d 337)

Decided September 2, 1975.

Rehearing denied October 6, 1975.

Holland & Hart, James T. Moran, for petitioner.

Charles M. Stoddard, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.


Certiorari was granted to review the decision of the court of appeals in *Burnford v. Blanning*, 33 Colo. App. 444, 525 P.2d 494.

The district court awarded petitioner a decree for specific performance of a contract for the sale and purchase of real estate. The contract provided for the sale of a certain tract of land in Pitkin County by respondent to petitioner. Upon appeal, the court of appeals reversed, holding that there was no valid and enforceable agreement between the parties. We disagree, and therefore reverse the judgment of the court of appeals.

The trial court entered extensive detailed findings of fact and conclusions of law. Having examined the findings of fact in the light of the record of evidence, we find them to be supported by ample competent evidence. Thus, in the appellate process, this court, and the court of appeals, are bound by the trial court's fact determination and are not at liberty to re-evaluate the evidence or substitute a different determination for that of the trial court.

In summary, the critical facts as found by the trial court show that the written contract was entered into on November 15, 1968. Respondent agreed to sell to petitioner for a price of $4,500 a tract of land in the area of the New Foundland patented lode mining claim which contained 0.362 acres and which was described by metes and bounds. The price was to be paid as follows: $500 upon execution of the contract, $1,000 at the time of tender of a marketable title, and the balance of $3,000 by a promissory note secured by a deed of trust, payable in four yearly installments.

Respondent concurrently entered into four similar agreements with respect to other parcels located in the New Foundland lode, adjacent to the tract sold to petitioner. All agreements were contingent upon the successful completion of a pending quiet title action. This condition was met when a favorable judgment quieting title in respondent was entered on September 9, 1969.

On September 23, 1969, respondent asked for an additional $500 from petitioner to help defray the costs of defending the judgment on appeal. Petitioner acceded to this request and the additional sum was credited on the contract of purchase.

The contract date for closing of the sale was November 15, 1969. This date was passed without demand for performance by either party in view of the appellate proceeding. The judgment of the district court quieting title to the premises was sustained by the court of appeals on December 29, 1970.

Respondent learned that before the sales out of the New Foundland lode could be consummated it would be necessary to subdivide the land in

accordance with the regulations of the Aspen Planning and Zoning Commission and the applicable ordinance of the city of Aspen. This requirement was not known by respondent at the time of the entry into the sales contracts in 1968, and it was not contemplated by the parties that the additional expenses necessitated by subdivision requirements would be involved. Pursuant to these requirements, respondent employed surveyors and commenced preparations of a preliminary plat, and took such other steps as necessary to satisfy the planning commission's requirements.

On February 12, 1971, petitioner, respondent and the others met to consider resolution of the problems created by subdivision requirements. Based on conflicting evidence, the trial court found that all parties agreed orally to increase the purchase price of each site by $2,000 and to change the terms of payment to cash. Respondent agreed to use his efforts to obtain approval of the subdivision plat. Eventually, the planning and zoning requirements were satisfied and the approved subdivision plat was filed for record on November 5, 1971. The tract described by metes and bounds, which petitioner had contracted to buy, was platted at Lot 5, Hoag Subdivision, Pitkin County, Colorado.

In the meantime, petitioner made a further payment on the purchase price to respondent of $1,000 on August 26, 1971. Thereafter, she paid him another $1,000 on November 10, 1971, and $1,000 on December 13, 1971, making total payment to that time of $4,000 toward the purchase price of the subject property.

On November 5, 1971, respondent caused to be delivered to petitioner a ledger sheet, admittedly in respondent's handwriting, headed by the endorsement: "Peronelle Burnford - Lot 5 - 15,811 sq. ft." Recorded on the ledger sheet was the original contract price of $4,500, together with credits showing the payments which had been made by petitioner up to that time. The ledger sheet also showed a debit dated November 1, 1971, for $2,000, designated as "survey & subdivision charge," thus evidencing a total obligation owing by petitioner to respondent of $6,500. On the same day, a title commitment from Dallas Title and Guaranty Company was given petitioner, showing a commitment to issue a title insurance policy in the sum of $6,500 on Lot 5, Hoag Subdivision, upon the recording of a deed from James C. Blanning, Jr., vesting title in Peronelle Burnford.

Respondent several times expressed his dissatisfaction over petitioner's delay in completing payment of the $6,500. On December 27, respondent advised petitioner that if she did not pay the balance within ten days the sale would be off and he would sell to another. She again agreed to do so, and then consulted an attorney, who tendered to respondent the balance of $500 owed on the original price of $4,500. This was refused and respondent, on January 3, 1972, within the ten-day period, then sold and conveyed the property to one R. P. Fitzgerald at a substantially higher price.

Suit was then commenced, seeking specific performance of the original agreement, or, in the alternative, specific performance of the agree-

ment as orally modified, with a tender of performance at the increased price. Fitzgerald, who was a named defendant in the specific performance suit, reconveyed the property to respondent and was then dismissed from the case.

The district court concluded that the parties never intended to rescind the written agreement by the oral modification of the purchase price, and that it would be inequitable to find the written agreement rescinded and at the same time to hold that the oral agreement was void under the statute of frauds, a result which the parties so clearly did not intend. The court further concluded that the enforcement of the contract at the original price of $4,500 would work a fraud on respondent, who had expended additional sums to comply with the unanticipated planning and zoning requirements, relying on the promises of petitioner and the other purchasers to pay the additional price of $2,000 per site. The court then concluded that under the circumstances, in view of the activities and assistance of the petitioner in helping to satisfy the planning and zoning requirements, and in making the cash payments which were different from those called for by the original contract, there was sufficient part performance to take the oral agreement out of the operation of the statute of frauds.

The court of appeals reversed the district court, finding, contrary to the trial court, that all parties had agreed that the written agreements should be rescinded in order to bring the subdivision into compliance with the municipal regulations; and that thereafter the respondent offered to sell the same lots to the respective purchasers for the equivalent of the original purchase price, plus $2,000.

The question of intent to rescind is one of fact. *Payne v. Cumming*, 136 Colo. 244, 315 P.2d 818; *Western Air Lines v. Hollenbeck*, 124 Colo. 130, 235 P.2d 792; *Powerine Co. v. Crown Co.*, 113 Colo. 450, 158 P.2d 732. Although the evidence concerning oral rescission of the written agreement was in dispute, there was competent evidence in the record to support the district court's finding that there was no rescission of the written contract between petitioner and respondent.

The court of appeals also found, contrary to the trial court, that there was not sufficient part performance.

The inquiry, then, is whether the original written contract for sale, as orally modified as to price, is enforceable in view of the limitations of the statute of frauds. Section 38-10-108, C.R.S. 1973. We hold that under all the facts and circumstances of this case there was sufficient part performance of the oral modification of the written contract to remove it from the operation of the statute of frauds, and that the contract as modified is specifically enforceable.

We recognize the broad general rule that a contract for the sale of land required to be in writing cannot be validly changed or modified as to a material condition (*i.e.*, purchase price) by a subsequent oral agreement, without more, so as to make the original written agreement, as orally modified, an enforceable obligation. 2 *A. Corbin, Contracts*, § 306;

72 Am. Jur. 2d *Statute of Frauds* § 274; Annot., 118 A.L.R. 1511.

The trial court recognized the applicability of this rule, but held that part performance of the oral modification rendered the statute of frauds inapplicable in this case. The record shows that petitioner made substantial payments in cash towards the purchase price, beyond the payments as called for in the written contract which provided for a note and deed of trust back to respondent. Additionally, petitioner, pursuant to the agreement of the parties, carried out her assignment of contacting the city of Aspen sanitarian in an effort to clarify and satisfy the water and sewer requirements imposed by the planning and zoning commission. Moreover, respondent had completely performed his task of obtaining approval of the subdivision plat and the filing of the same.

The entire record convinces us that no inequity will be perpetrated in this case by permitting enforcement of the contract as modified. To hold it unenforceable under these circumstances would allow the statute to operate as a cloak for, rather than a shield against, fraud, thus unjustly denying petitioner the benefit of her bargain. See, *Rupp v. Hill*, 149 Colo. 48, 367 P.2d 746.

We conclude that the trial court was correct in ordering specific performance of the contract.

The judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals with directions to enter judgment affirming the judgment of the district court.

MR. JUSTICE DAY and MR. JUSTICE KELLEY do not participate.