**AVEMCO INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**NORTHERN COLORADO
AIR CHARTER, INC.,**
Defendant–Appellant.

No. 99CA1262.

Colorado Court of Appeals,
Div. I.

Sept. 28, 2000.

Rehearing Denied Dec. 7, 2000.*

Certiorari Granted July 2, 2001.

---

* Jones, J., would GRANT.

Tienken & Hill, L.L.P., James C. Tienken, Alan G. Hill, Louisville, Colorado, for Plaintiff–Appellee.

Fonfara Law Offices, Joseph P. Fonfara, Fort Collins, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

In this declaratory judgment action concerning aircraft insurance coverage, defendant, Northern Colorado Air Charter, Inc. (NCAC), appeals from the summary judgment entered by the trial court in favor of plaintiff, Avemco Insurance Company (Avemco). The court held that NCAC's acceptance and cashing of Avemco's check refunding all insurance premiums paid under the insurance policy constituted a mutual rescission of the policy as a matter of law. We reverse and remand for further proceedings.

In 1997, Avemco issued a commercial aviation insurance policy to NCAC. A few months later, after one of its insured aircraft was struck by lightning and rendered unserviceable, NCAC filed a claim with Avemco.

In the course of investigating the claim, Avemco discovered what it believed were misrepresentations by NCAC in its insurance application. On April 13, 1998, Avemco, through its claims manager, sent a letter to NCAC, denying coverage because of "a material misrepresentation in [the] signed application for insurance" and purporting to rescind the insurance policy based on the alleged misrepresentation. Specifically, Avemco claimed NCAC had falsely stated that it had not had any accidents, incidents, losses, or insurance claims in the past when, in fact, one of its aircraft had been involved in a collision with a parked aircraft.

In its letter, Avemco stated: "As a result of this misrepresentation, Avemco Insurance Company is rescinding your current 1997/1998 policy from inception and will be refunding premium paid in the amount of

"$10,381.81 under separate cover." Avemco sent NCAC a check in that amount.

Thereafter, Avemco brought this declaratory judgment action, seeking a determination that no coverage existed and that the policy was rescinded and void *ab initio* by reason of the alleged misrepresentation. NCAC denied Avemco's allegations and asserted counterclaims, including one for breach of contract.

After it had filed its answer and counterclaim, NCAC cashed the refund check Avemco had sent it and retained the proceeds.

The parties filed cross-motions for summary judgment on the issue of coverage. In its motion, Avemco asserted, as pertinent here, that "a mutual rescission of the policy [had] occurred because [NCAC] [had] cashed the premium refund check."

Based on its reading of *Equitable Life Insurance Co. v. Verploeg*, 123 Colo. 246, 227 P.2d 333 (1951), which it found to be dispositive, the trial court held that, by cashing the refund check and accepting the proceeds, NCAC had agreed to rescission of the insurance policy. Accordingly, the court entered summary judgment in favor of Avemco, determining that the policy was rescinded and void from the inception. The court dismissed NCAC's counterclaims. This appeal followed.

Defendant contends that the trial court erred in holding that *Verploeg* is dispositive and compels a finding of rescission as a matter of law. We agree.

In *Verploeg*, the insurer issued three life insurance policies to the insured. All three policies contained a provision that disability benefits were to be terminated upon insured's engaging in military service in time of war. When the insurer learned that the insured had been ordered into active duty, it notified him that the disability benefits had been terminated and enclosed a check representing a refund of unearned premiums under the policies. The insured later endorsed and cashed the refund check. In reversing the trial court ruling in favor of the insured, the supreme court stated: "We believe that, *under the facts as disclosed,* there has been a rescission of the disability benefits in the

policies in dispute." *Equitable Insurance Co. v. Verploeg, supra,* 123 Colo. at 252, 227 P.2d at 335 (emphasis added).

The *Verploeg* court went on to point out that the insured had retained the check for over four months, and had also endorsed and negotiated it. In addition, the court stated:

[A]fter that a period of over five months ensued before insured petitioned for reinstatement under the policy provisions. This latter act would seem again to confirm the fact that insured knew, and recognized, that the disability provisions were no longer effective. In the meantime he had continued to pay ordinary life premiums on the policies, while no payments were being made on account of the disability provisions.

*Equitable Life Insurance Co. v. Verploeg, supra,* 123 Colo. at 253, 227 P.2d at 336.

In light of these additional circumstances, we do not read *Verploeg* as holding that the mere cashing of a check for return of premiums always effects a mutual rescission as a matter of law.

Our view of *Verploeg* is consistent with the holding of courts in other jurisdictions that the mere fact that an insured cashes a refund check is not by itself sufficient to constitute rescission as a matter of law. *Thompson v. Occidental Life Insurance Co.,* 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973). Indeed, as the court recognized in *Mutual of Omaha Insurance Co. v. Korengold,* 308 Minn. 457, 241 N.W.2d 651 (1976):

There may be many instances in which an uninformed and unsophisticated insured will cash a refund check sent to him by an insurance company, which intends by sending the check to divest itself of responsibility under the policy. In such a case rescission should not be established solely because the insured cashes the check. Any contrary rule could lead to gross unfairness to an insured who for various reasons, including sheer financial necessity, may feel compelled to cash a refund check even though he vigorously disagrees that there was any misrepresentation in obtaining the insurance.

*See also* 2 G. Couch, *Couch on Insurance* § 32:37 (L.R. Russ 3d ed.1997).

Here, NCAC filed an answer and counterclaim denying that Avemco had a right to rescind the policy and seeking both damages and a declaration that Avemco was required to provide coverage. After cashing the check, NCAC continued to deny that Avemco had a right to rescind.

Further, in response to Avemco's motion for summary judgment, NCAC filed affidavits of its corporate officers averring that they had not agreed on behalf of NCAC to a mutual rescission of the policy. In addition, the affidavits contain denials that NCAC had made material misrepresentations in the insurance application.

Mutual rescission requires assent by both parties obligated under the contract. There must be a meeting of the minds, and the rescission must be with the clear knowledge and understanding of the parties. *Western Air Lines v. Hollenbeck*, 124 Colo. 130, 235 P.2d 792 (1951). Where a mutual rescission is founded on the conduct of the parties, such conduct must be inconsistent with the existence of the contract. *Esecson v. Bushnell*, 663 P.2d 258 (Colo.App.1983).

Whether the parties assented to a mutual rescission is an issue of fact. *Randall v. Carroll*, 30 Colo.App. 45, 488 P.2d 250 (1971).

In *Verploeg*, the court emphasized that the conduct of the insured after cashing the check evidenced an understanding that the disability coverage was no longer in effect. Here, however, NCAC has continuously denied that it agreed to a rescission and has vigorously defended the lawsuit. The only conduct that could be interpreted as being consistent with an agreement to rescind is NCAC's cashing of the check.

As noted, the question of intent to rescind is one of fact. *Burnford v. Blanning*, 189 Colo. 292, 540 P.2d 337 (1975). Under the circumstances here, we conclude that there remain genuine issues of material fact as to whether the parties intended a mutual rescission and also as to whether NCAC made material misrepresentations in its policy application. Thus, summary judgment should not have been entered.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judge METZGER concurs.

Judge JONES dissents.

Judge JONES dissenting.

I respectfully dissent. I believe that the trial court did not err in relying on *Equitable Life Insurance Co. v. Verploeg*, 123 Colo. 246, 227 P.2d 333 (1951), as dispositive. I read *Verploeg* as holding that the insured's acceptance, and subsequent endorsement and negotiation of the refund check gave rise, as a matter of law, to a mutual rescission. The case holding is still good law, and is applicable in this declaratory judgment action.

As the supreme court stated in *Verploeg*: "Nothing could be plainer than that, if [insured] accepted the return of the premiums, [it] consented to and effectuated a rescission by consent. [It] could not possibly believe that [it] was entitled to both the returned premiums and the insurance which the premiums had been paid to obtain." *Equitable Life Insurance Co. v. Verploeg, supra*, 123 Colo. at 252, 227 P.2d at 336. *See also* 2 G. Couch, *Couch on Insurance* § 31.121 (L.R. Russ 3d ed.1997). There is nothing in the *Verploeg* court's holding that qualifies the legal occurrence of mutual recission based on when, even during pending litigation, as here, the insured chooses to rescind.

Thus, in my view, the trial court was correct in determining as a matter of law that NCAC's cashing of the refund check and retention of the proceeds resulted in a mutual rescission of the insurance policy.

I would, therefore, affirm the trial court's judgment.