AVEMCO INSURANCE COMPANY, Petitioner,

v.

NORTHERN COLORADO AIR CHARTER, INC., Respondent.

No. 00SC985.

Supreme Court of Colorado, En Banc.

Jan. 14, 2002.

Tienken & Hill, L.L.P., James C. Tienken, Alan G. Hill, Louisville, CO, Attorneys for Petitioner.

Fonfara Law Offices, Joseph P. Fonfara, Fort Collins, CO, Attorneys for Respondent.

Justice MARTINEZ delivered the opinion of the Court.

In May 1998, petitioner Avemco Insurance Company ("Avemco") filed this action against respondent Northern Colorado Air Charter, Inc. ("NCAC") seeking a declaratory judgment that Avemco was not required to provide benefits under an aircraft insurance policy issued by Avemco to NCAC in late 1997. Avemco subsequently amended its complaint to assert that a mutual rescission had occurred. Avemco then moved for summary judgment on all claims, including the claim of mutual rescission. The trial court granted summary judgment in Avemco's favor on the issue of mutual rescission. The trial court held that, under *Equitable Life Insurance Co. of Iowa v. Verploeg*, 123 Colo. 246, 227 P.2d 333 (1951), Avemco's actions of mailing NCAC a letter expressly rescinding the insurance contract, then subsequently mailing NCAC a check refunding the premiums, coupled with NCAC's endorsement and negotiation of that check, accomplished a mutual rescission of the insurance contract. The court of appeals reversed, holding that *Verploeg* was not dispositive on the question of

mutual rescission. *Avemco Ins. Co. v. N. Colo. Air Charter*, 25 P.3d 1238 (Colo.App. 2000).

We granted certiorari to determine (1) whether the court of appeals erred in reversing the trial court's entry of summary judgment for Avemco on the issue of mutual rescission when it found that NCAC's acceptance, endorsement, negotiation, and retention of the premium refund check and proceeds transmitted by Avemco for the stated purpose of rescinding the insurance policy between the parties did not give rise, as a matter of law, to a mutual rescission of the policy; and (2) whether NCAC is entitled to assert facts on remand before the trial court demonstrating that coverage exists under the insurance policy between the parties. We conclude that NCAC voluntarily negotiated the premium refund check knowing that the purpose of the check was to accomplish a mutual rescission of the insurance policy. Based on such voluntary and informed action, which amounted to an objective manifestation of assent to rescission, the rescission intended by Avemco was realized because there was a meeting of the minds. We further find that NCAC failed to offer any competent evidence to rebut the strong presumption that its cashing of the premium refund check accomplished mutual rescission. Accordingly, we conclude that the trial court properly granted summary judgment in Avemco's favor on the issue of mutual rescission and thus reverse the judgment of the court of appeals.

I.

In late October 1997, Avemco issued a commercial airline insurance policy to NCAC. In early 1998, after an NCAC aircraft was struck by lightning, sustaining extensive damage, NCAC filed a claim with Avemco. While investigating the claim, Avemco discovered what it believed was a material misrepresentation in NCAC's original application for insurance.[1]

---

1. Specifically, Avemco alleges that NCAC misrepresented that NCAC had no incidents or accidents in the thirty-six months prior to applying for coverage. NCAC denies such misrepresenta- tion, instead asserting that it was an error by an agent of Avemco, who incorrectly completed the application. Because we do not base our decision on the alleged misrepresentation, but in-

On April 13, 1998, Avemco sent a letter to NCAC that stated, in pertinent part, "[o]ur investigation into this matter has been completed and coverage is being denied due to a material misrepresentation in your signed application for insurance.... As a result of this misrepresentation, Avemco Insurance Company is rescinding your current 1997/1998 policy from inception and will be refunding premium paid in the amount of $10,381.81 under separate cover." On May 12, 1998, Avemco tendered the premium refund check to NCAC. On May 14, 1998, Avemco initiated this declaratory judgment action, seeking a declaration that it was not required to provide benefits to NCAC under the insurance contract based on the alleged material misrepresentation.[2] On June 14, 1998, NCAC filed its answer and counterclaims, which included a claim of breach of the insurance contract. On July 13, 1998, NCAC endorsed and negotiated the premium refund check.

The parties filed cross-motions for summary judgment. As relevant here, Avemco contended that it was entitled to summary judgment on the issue of rescission, arguing that there was no issue of material fact that precluded the trial court from finding as a matter of law that a mutual rescission had been accomplished. Specifically, Avemco argued that its letter expressly rescinding the insurance contract, coupled with the tender of the premium refund check, amounted to an offer to rescind that was accepted by NCAC when NCAC endorsed and negotiated the check.

The trial court agreed with Avemco and granted summary judgment in its favor, ruling that the insurance contract was rescinded and void from its inception. The trial court found that our decision in *Equitable Life Insurance Co. of Iowa v. Verploeg*, 123 Colo. 246, 227 P.2d 333 (1951), was controlling. Accordingly, the trial court held that, al-

though NCAC maintained that Avemco's assertion of misrepresentation was erroneous and Avemco thus had no right to rescind, such protestations, even in the form of NCAC's counterclaims, did not diminish the effect of NCAC's knowing and voluntary action of negotiating the premium refund check, which resulted in a mutual rescission.

The court of appeals reversed. It concluded that *Verploeg* does not stand for the proposition that the mere cashing of a premium refund check always effects a mutual rescission as a matter of law. The court of appeals reasoned that because NCAC asserted counterclaims, including a claim for breach of contract, and because NCAC continued to deny that Avemco had a right to rescind, there was evidence that there was no meeting of the minds regarding mutual rescission. The court of appeals stated: "Under the circumstances here, we conclude that there remain genuine issues of material fact as to whether the parties intended a mutual rescission and also whether NCAC made material misrepresentations in its policy application. Thus, summary judgment should not have been entered." *Avemco Ins. Co.*, 25 P.3d at 1241. In a dissenting opinion, Judge Jones stated that, based on his view, *Verploeg* was dispositive, compelling the trial court's conclusion that mutual rescission had occurred as a matter of law.

## II.

This case requires us to revisit our decision in *Verploeg*, as well as to consider the principles of mutual rescission articulated by other courts, in order to articulate a more definite rule regarding the effect of an insured knowingly and voluntarily cashing a premium refund check when an insurer tenders that check with the express intent of rescinding the policy.

stead find that a mutual rescission occurred, we need not address the dispute as to the alleged misrepresentation.

**2.** Avemco also sought a declaration that it properly denied NCAC's claim based on the fact that NCAC allegedly disassembled the aircraft before Avemco inspected it in violation of a specific

provision of the insurance contract. This issue differs from the above-mentioned misrepresentation issue because it involves an action (disassembling the aircraft) separate from and occurring after the alleged misrepresentations in the application for insurance. This issue is not before us.

### A.

Mutual rescission of an insurance contract is predicated on mutual consent and is therefore accomplished when there is a meeting of the minds between the insurer and the insured. *Verploeg*, 123 Colo. at 252, 227 P.2d at 336; 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 31:59 (1995). Mutual rescission renders the insurance contract void *ab initio*. *Peterson v. N.Y. Life Ins. Co.*, 185 Minn. 208, 240 N.W. 659, 659–60 (1932). Mutual rescission may be manifested by conduct; no written agreement is necessary. 2 Couch, *supra*, § 31:55. When an insurer mails a letter to an insured stating its intent to rescind and tenders a check to the insured representing a refund of the premiums, and the insured understands the intent to rescind when cashing the check, a meeting of the minds is deemed to have occurred. *Peterson*, 240 N.W. at 660; 2 Couch, *supra*, § 31:55.

An insured's professed lack of intent to forgo his or her claim after having cashed the check is immaterial to the issue of rescission; it is the knowing, voluntary, and informed *action* of cashing the check that effects a meeting of the minds and the resulting mutual rescission. *Peterson*, 240 N.W. at 660. In other words, the relevant inquiry regarding whether rescission has occurred is whether there has been a meeting of the minds. *Lundy v. Lititz Mut. Ins. Co.*, 232 S.C. 1, 100 S.E.2d 544, 547 (1957); Henry Campbell Black, *Black on Rescission* § 525 (1929). Such meeting of the minds is evidenced by "acts, conduct and words, taken in connection with the attendant circumstances," and is not evidenced by any subjective, unexpressed intent by either party. *Lundy*, 100 S.E.2d at 547; Black, *supra*, § 528 (stating that rescission may result when parties act in a way that "clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other").

Because such meeting of the minds is evidenced through words or conduct, the subjective intent of either party is not dispositive of the issue of meeting of the minds. In fact, "[a]s in any contract, the subjective intent of the parties to a contract of rescission is immaterial. A mutual rescission is effected, if at all, on the basis of the parties' objective manifestations of assent." *Wippman v. Rowe*, 24 Ariz.App. 522, 540 P.2d 141, 144 (1975) (citing *In re Estate of Lyman*, 7 Wash.App. 945, 503 P.2d 1127 (1972), adopted, 82 Wash.2d 693, 512 P.2d 1093 (1973)); *see also Peterson*, 240 N.W. at 660 (holding that "when [the insured] cashed the [premium refund] check transmitted for that purpose [of rescission] stated in the letter, the minds of the parties met and the rescission became complete," notwithstanding the insured's statement that he did not intend such rescission); *Hayford v. Century Ins. Co.*, 106 N.H. 242, 209 A.2d 716 (1965) ("The intent of the parties is to be judged by objective or external standards, rather than by their unmanifested state of mind."); *Modern Builders, Inc. v. Manke*, 27 Wash.App. 86, 615 P.2d 1332, 1337 (1980) ("uncommunicated, subjective intent by one party" is not sufficient to rebut a finding of rescission because "[i]n order for rescission to be legally operative, all parties to the contract must consent to rescission by words or objective conduct").

Additionally, even if there exists a good-faith controversy between the parties regarding the insurer's right to rescind, the acts of the insurer tendering the check with the explicit representation that the check is offered to effectuate a rescission, and the cashing of that check by the insured with knowledge of the insurer's intent to rescind, renders the rescission effective notwithstanding the contested grounds for the rescission in the first instance: "The [insurer] was in good faith contending that it had a right to rescission and offered the [insured] a return of premiums. It did not necessarily have to be able to establish that right in court at a later time. In the full knowledge of [insurer's] contention the [insured] accepted and cashed the check." *Peterson*, 240 N.W. at 660; *see also Warren v. N.Y. Life Ins. Co.*, 40 N.M. 253, 58 P.2d 1175, 1179 (1936).

Ordinarily, whether mutual rescission has been accomplished is a question of fact for the jury. However, when no genuine

issue of material fact exists regarding the issuance of the letter and refund check by the insurer and the act of cashing the check by the insured, whether rescission has occurred may become a question of law for the court. *Warren,* 58 P.2d at 1182; 2 Couch, *supra,* § 30:21; *see also Oglesbee v. Nat'l Sec. Fire & Cas. Co.,* 788 F.Supp. 909, 914 (S.D.Miss.1992); *Klanian v. N.Y. Life Ins. Co.,* 68 R.I. 126, 26 A.2d 608, 613 (1942).

### B.

In addition to implicating the foregoing principles of mutual rescission and the standard for summary judgment, this case raises the question of whether the knowing and voluntary cashing of a premium refund check by an insured per se effects a mutual rescission of the contract as a matter of law, requiring us to explain and construe our holding in *Verploeg.* Because the parties, as well as the lower courts, disagreed about the proposition for which *Verploeg* stands, a detailed discussion of that case is necessary. In essence, this case presents the question of whether *Verploeg* stands for the proposition that the cashing of a premium refund check by an insured, when the insured knows that the check is tendered with the intention to rescind the insurance contract, achieves, per se, mutual rescission of an insurance contract.

In *Verploeg,* Equitable Life, the insurer, issued three policies to Verploeg, the insured. *Verploeg,* 123 Colo. at 247, 227 P.2d at 333. The policies provided for disability benefits under certain circumstances, but the disability provision also contained a termination provision, stating that such disability benefits would be terminated if, among other things, the insured engaged in military service in time of war. *Id.* After learning that Verploeg had been ordered to active duty, Equitable Life notified him by mail that, while the ordinary life provisions of the policies were to remain in effect,[3] his disability benefits had been terminated pursuant to the provision in the policy. *Id.* With that letter, Equitable Life included a check representing the

refund due to Verploeg of the unearned premiums for the disability benefits from the date of his enlistment. *Id.* After returning to civilian life, Verploeg applied for reinstatement of his disability benefits, which was denied by Equitable Life. *Id.* at 248, 227 P.2d at 334. Verploeg initiated a declaratory judgment action, which resulted in a court-ordered reinstatement of his disability provisions upon his payment of the premiums. *Id.*

Equitable Life appealed, arguing that Verploeg's acceptance and negotiation of the premium refund check constituted an agreement with Equitable Life to rescind the disability provisions. *Id.* at 251, 227 P.2d at 335. In reversing the trial court, the *Verploeg* court stated:

> We believe that, under the facts of this case, there has been a rescission of the disability benefits in the policies in dispute. As stated in *Peterson v. New York Life Ins. Co.,* "Nothing could be plainer than that if plaintiff accepted the return of the premiums he consented to and effectuated a rescission by consent. He could not possibly believe that he was entitled to both the returned premiums and the insurance which the premiums had been paid to obtain. When he cashed the check transmitted for the purpose stated in the letter, the minds of the parties met and the rescission became complete. An effort a month later to retract was ineffectual."

*Id.* at 252, 227 P.2d at 336 (citation omitted).

We agree with the court of appeals that *Verploeg* did not articulate a per se rule that whenever an insured cashes a check, tendered by the insurer for the express purpose of rescinding the insurance policy, such rescission occurs as a matter of law. The *Verploeg* court reached its conclusion with the noteworthy proviso that "under the facts as disclosed" in that particular case, rescission had occurred. *Verploeg,* 123 Colo. at 252, 227 P.2d at 335. Such limiting language cannot be ignored; its effect is the rejection of a per se rule relating to mutual rescission. However, the question remains regarding what the proper standard is for evaluating

---

**3.** Verploeg continued to pay the premiums on the non-disability provisions of his policies at all relevant times.

the acts of NCAC in cashing the check sent by Avemco. In devising a standard for consideration of the situation presented in this case, we consider, in addition to our decision in *Verploeg,* the standards implicitly or explicitly articulated in other jurisdictions.

Several state supreme courts have considered the issue presented in this case. None has articulated a per se rule regarding rescission in the factual context presented here. Most, however, have found, when presented with facts very similar to those presented here, that mutual rescission occurred. For example, in *Peterson,* the insurer sent the insured a check, expressly explaining that the insurance company was electing to rescind the contract based on misrepresentations in the application, and stating that the check represented a refund of premiums. *Peterson,* 240 N.W. at 659. The insured cashed the check, then, about a month later, sent a check to the insurance company in an attempt to return the money he had received from the insurer. *Id.* The insured also expressed a subjective intent not to rescind the insurance contract in cashing the check. *Id.* The supreme court of Minnesota found that an insured who cashes a check, knowing that the insurer intended rescission in tendering the check, accepted the insurer's offer to rescind, thereby voiding the insurance contract *ab initio. Id.* at 659–60. Nowhere in *Peterson,* however, did the court articulate a per se rule. Instead, the *Peterson* court held that because there was no dispute regarding the facts surrounding the tendering and cashing of the check, the issue of consent to rescission was properly a question of law for the court. *Id.* at 660. The *Peterson* court also implicitly adopted the rule that the subjective intent of the insured not to rescind was immaterial, finding that rescission occurred notwithstanding the insured's intent to the contrary based on the "objective manifestation of assent" to the rescission, namely cashing the check. *Id.*

The supreme court of Minnesota had the opportunity to revisit the issue of the impact of an insured cashing a check sent by the insurer for the purposes of rescinding the policy in *Mutual of Omaha Insurance Co. v. Korengold,* 308 Minn. 457, 241 N.W.2d 651 (1976). *Korengold,* relied on in the present case by the court of appeals in reversing the trial court, involved an action by an insurer to rescind an insurance policy based on the alleged misrepresentations of Korengold, the insured. *Id.* While the action was proceeding, Korengold cashed the check and retained the proceeds, after which the insurer sought summary judgment on the issue of rescission. *Id.* Like the present case, the insurer notified Korengold by letter of the intended rescission, as well as sent a check refunding the premium.

In declining to adopt a per se rule, the *Korengold* court stated that "[t]he mere fact that an insured cashes or retains a refund check is not by itself sufficient to constitute rescission as a matter of law." *Id.* at 652. That court also noted there may be instances in which "an uninformed and unsophisticated insured will cash a refund check sent to him by an insurance company, which intends by sending the check to divest itself of responsibility under the policy. In such a case rescission should not be established *solely* because the insured cashes the check." *Id.* (emphasis in original). Notwithstanding these qualifications, the *Korengold* court found that Korengold, who the court noted was a lawyer, "had the requisite knowledge to intend a rescission of the contract when he cashed the premium refund check." *Id.*

In the present case, the court of appeals relied on *Korengold* to support its conclusion that NCAC did not effect a rescission in cashing the premium refund check because NCAC asserted a counterclaim for breach of contract. Reliance on *Korengold* is not convincing because the court of appeals appears to have relied on the *Korengold* court's language regarding "instances in which an uninformed and unsophisticated insured" cashes a premium refund check, which is clearly distinguishable from the present case, in which NCAC, a corporation represented by counsel, is neither uninformed nor unsophisticated.

In *Warren v. New York Life Insurance Co.,* the insurer notified the insured by mail that it was rescinding the policy because the insured failed to disclose facts on his application that were relevant to his insurability.

*Warren*, 58 P.2d at 1176. The insurer also tendered a premium refund check to the insured, which the wife of the insured cashed. *Id.* at 1176–77. When the insured filed suit for insurance coverage, the insurer contended that the policy had been mutually rescinded. *Id.* at 1177. The New Mexico Supreme Court agreed with the insurer, stating that the " 'great weight of authority in the United States' " is that "acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered." *Id.* at 1180 (quoting 3 *Williston on Contracts* § 1854). Like the *Peterson* court, the *Warren* court did not adopt a per se rule, but instead concluded that, given the "great weight of authority" and "viewing the evidence as a whole, we think it supports but one reasonable conclusion, and that is that the [insured] acquiesced in the rescission claimed and may not now dispute it as an accomplished fact." *Id.* at 1182.

The supreme court of Wisconsin has similarly held that rescission of an insurance policy occurred where an insurer, upon discovery of alleged misrepresentations in the insured's application, notified the insured of the intended rescission and tendered a check refunding the premiums. *Ryder v. State Farm Mut. Auto. Ins. Co.*, 51 Wis.2d 318, 187 N.W.2d 176 (1971). Again, the *Ryder* court did not articulate a per se rule. Instead, it looked to the facts surrounding the tender of the premium refund check by the insurer and the retention of that check by the insured to determine if rescission occurred. *Id.* at 178, 181.

Additionally, the supreme court of Mississippi held in *Phoenix Insurance Co. of Brooklyn v. Hunter*, 95 Miss. 754, 49 So. 740 (1909), that rescission of an insurance policy was accomplished when the insurer sent a letter of rescission along with a refund check and the insured retained the check without objection or further correspondence. *Id.* at 740. In reaching this conclusion, however, the *Hunter* court declined to articulate a per se rule. Although it did not articulate an express standard for considering these cases, the *Hunter* court seemed to adopt the position that the facts as presented gave rise to a strong inference of rescission: "The action of the insurance company in this case was more than a mere expression of an intention to cancel this policy.... There is no liability under this policy on the part of the insurance company on the facts of the case." *Id.* at 764–65.

Finally,[4] the South Carolina Supreme Court in *Lundy v. Lititz Mutual Insurance Co., Inc.*, 232 S.C. 1, 100 S.E.2d 544 (1957), articulated a standard that we find convincing. In *Lundy*, the insurance company sent the insured a premium refund check, upon which was written a notice stating that acceptance of the check by the insured would cancel the policy. *Id.* at 545. Several months after receiving the check, the insured cashed it. The *Lundy* court, while holding that a rule of per se mutual rescission was inappropriate, articulated the standard that acceptance by an insured of a check refunding the unearned premium, knowing the intent of the insurer to cancel the policy upon such acceptance, is "a circumstance showing, or tending strongly to show, assent by insured to cancellation." *Id.* at 547. The *Lundy* court also stated, however, that there would be some circumstances that would "overcome the inference of consent." *Id.*

We thus hold that *Verploeg* did not articulate a per se rule that rescission occurs as a matter of law when an insured cashes a check tendered by the insurance company with the express objective to accomplish rescission. Instead, we read *Verploeg* as implicitly containing the rule that we explicitly articulate today: When an insured voluntarily cashes a premium refund check with the knowledge that the purpose of such check is rescission of the policy, such action on the part of the insured shows that a meeting of the minds, and thus, rescission, has occurred. In other words, if the insurer, in tendering the premium refund check,

---

4. Other state high courts have found rescission accomplished under facts similar to the present case. *See, e.g., Penn Mut. Life Ins. Co. v. Hartle*, 165 Md. 120, 166 A. 614 (1933); *LaRocca v. John Hancock Mut. Life Ins. Co.*, 286 N.Y. 233, 36 N.E.2d 126 (1941). Federal courts have found rescission under facts similar to the present case. *See, e.g., Kincaid v. N.Y. Life Ins. Co.*, 66 F.2d 268 (5th Cir.1933).

makes clear to the insured the consequences of cashing that check, namely rescission, then it may be inferred that such rescission has been accomplished. The insured is entitled to offer facts to demonstrate such inference is unfounded or erroneous and in such a case may avoid rescission.

 Additionally, although an insured may offer evidence to rebut the inference of rescission, that evidence must be more than an assertion of a subjective intent not to rescind. Such a bald assertion of lack of subjective intent is not competent evidence to rebut the inference of rescission because, as previously noted, mutual rescission is effected "on the basis of the parties' objective manifestations of assent" and not by a party's subjective intent. *Wippman,* 540 P.2d at 144. Thus, in order to overcome the inference of rescission, the insured must offer evidence, beyond a subjective intent not to rescind, to rebut the acts of the insurer and the insured. *See, e.g., Klanian v. N.Y. Life Ins. Co.,* 68 R.I. 126, 26 A.2d 608, 611–13 (1942) (finding no mutual rescission, notwithstanding that the insured cashed the premium refund check, which was accompanied with a letter of rescission, where the insured was illiterate and, once he discovered the intent of the insurance company, attempted to return the refunded premium to the insurer).

### III.

 Turning to the present case, and applying the foregoing principles, we find that the trial court correctly granted summary judgment in favor of Avemco on the issue of mutual rescission.

There is no dispute that Avemco sent, and NCAC received, a letter expressly stating that Avemco was rescinding the policy due to NCAC's alleged misrepresentations. There is likewise no dispute that NCAC read and understood the letter. Finally, there is no dispute that NCAC cashed the check after retaining it for two months. These undisputed facts thus show that rescission has occurred; it may be inferred that such rescission has been accomplished because NCAC voluntarily and knowingly cashed the premium refund check, thus creating an inference that a meeting of the minds occurred.

NCAC argues that, although it cashed the premium refund check, it did not intend to consent to rescission. NCAC presented affidavits of two of its corporate officers to that effect. The affidavits state, in pertinent part, that each of the two officers "does not agree to a mutual rescission on behalf of NCAC and has never agreed to a mutual rescission on behalf of NCAC. NCAC is contesting this lawsuit to achieve the benefits of NCAC's insurance contract with Avemco."

Such assertions are unpersuasive and do not create a genuine issue of fact regarding the pertinent inquiry, namely whether there was a meeting of the minds, to preclude summary judgment on the issue of mutual rescission. The inference of rescission was created by NCAC's knowledge of Avemco's intent to rescind, based on the explicit reference thereto in the letter, and NCAC's knowledge that the purpose of Avemco tendering the premium refund check was to accomplish that rescission, coupled with NCAC voluntarily cashing that check. This inference is not rebutted by NCAC's mere assertion that it did not intend such rescission because the subjective intent of a party is immaterial to the issue of rescission. *See Wippman,* 540 P.2d at 144 (mutual rescission is effected "on the basis of the parties' objective manifestations of assent" and not by a party's subjective intent); *Peterson,* 240 N.W. at 660 ("True, [the insured] says he did not intend to forego his claim for $1,000 against the policy, but this does not change the effect of what he did.").

Other courts have held that affidavits expressing a lack of intent to rescind or an incorrect belief regarding the purpose of the premium refund check are not sufficient evidence to create a question of fact regarding the ultimate inquiry of whether there was a meeting of the minds on the issue of rescission. *See, e.g., Cates v. Cont'l Cas. Co.,* 366 S.W.2d 126, 127 (Tex.Ct.Civ.App.1963) ("[N]o issue of fact is raised by appellant's affidavit that he 'believed said check to be either a partial payment of claim or dividend.' ").

Additionally, the *Lundy* court, which we rely on to articulate our standard today, per-

suasively articulated an objective standard for assessing an insured's claim that he or she did not intend to rescind the insurance contract in cashing the premium refund check. The *Lundy* court stated that the insured must have either actual notice of the insurer's intent to rescind or that " 'such intention has been so expressed as to give notice to the ordinary [person] in the exercise of ordinary care.' " *Lundy*, 100 S.E.2d at 546–47 (quoting *Grant Lumber Co. v. N. River Ins. Co.*, 253 F. 83, 88 (D.Idaho 1918)). The *Lundy* court further held that a court may consider whether, as a matter of law, an insured failed to act as a person of reasonable prudence in cashing a premium refund check tendered by an insurer. In crafting this standard, the *Lundy* court implicitly acknowledged that the relevant inquiry regarding rescission is whether there has been mutual consent, or a meeting of the minds, between the parties to the asserted rescission. In articulating the objective person standard, then, the *Lundy* court recognized that the subjective intent of the insured is immaterial to the inquiry regarding a meeting of the minds. To the contrary, only objective, outward manifestations of assent (or, in pertinent cases, disagreement) are relevant to the inquiry regarding meeting of the minds.

Under the facts of this case, we find that a reasonable person would understand Avemco's intent to rescind the insurance contract in mailing the letter of rescission and tendering the premium refund check. We further conclude that, as a matter of law, NCAC's act of cashing the premium refund check with the full knowledge of Avemco's intent to rescind was not the act of an ordinary prudent company that did not intend such rescission; a ordinary company exercising ordinary care could "not possibly believe that [it] was entitled to both the returned premiums and the insurance which the premiums had been paid to obtain." *Peterson*, 240 N.W. at 660. In other words, NCAC's actions and outward conduct in accepting and cashing the premium refund check evidences a meeting of the minds and a mutual consent to rescission, rendering its after-the-fact assertion of its subjective intent to the contrary immaterial to the inquiry.

On a summary judgment motion regarding mutual rescission of an insurance contract, the inquiry for a trial court is whether there is a genuine issue of material fact regarding a meeting of the minds, an inquiry that does not involve consideration of the subjective intent of either party. Accordingly, the assertions of NCAC's corporate officers in their affidavits that they did not "agree" to a mutual rescission do not create a genuine issue of material fact on the dispositive issue of a meeting of the minds to withstand summary judgment. On the contrary, NCAC's assertions regarding its subjective intent are immaterial to the dispositive inquiry given their act of cashing the premium refund check.

NCAC also places great weight on the fact that, before it cashed the premium refund check, it filed its counterclaims. NCAC contends that this provides evidence of its intent *not* to agree to the rescission attempted by Avemco. Again, we are unpersuaded. There is no dispute that NCAC knew and understood Avemco's intent in tendering the premium refund check. Any action taken beyond the mailing of the letter and the check by Avemco and the cashing of that check by NCAC does not go to the inference of rescission that arose when NCAC cashed the check because such actions do not go to the central issue of a meeting of the minds through objective manifestation of mutual assent to rescind. NCAC's acceptance and cashing of the check is inconsistent with its assertion that it intended and believed that it was covered by the policy at the time of the incident. If it truly intended to maintain its counterclaim for breach of contract, namely that Avemco owed it a duty of coverage for the time period leading up to and including the incident, then it could not at the same time (and consistently maintain its counterclaims) accept the premium refund for the entire period of coverage.

Perhaps, if NCAC had retained only those proceeds that represented the time period after the incident, and returned to Avemco that portion of the premium refund that represented the time period before and including the incident, there may have been a

more persuasive claim on NCAC's behalf that it did not accept Avemco's offer to rescind the contract. Such a hypothetical situation may constitute a circumstance that would "overcome the inference of consent" to the rescission. *Lundy*, 100 S.E.2d at 547. More specifically, such a situation might raise a question of fact sufficient to preclude summary judgment regarding an insured's consent to rescind because the insured's objective acts raise a question about the presence of any "manifestation of assent" to the offer of rescission by the insurer. *Wippman*, 540 P.2d at 144. However, no such facts are present in this case. In contrast, the facts of this case conclusively support the strong inference that rescission occurred.

NCAC also contends that because rescission is an equitable remedy, a court must consider the totality of circumstances surrounding the rescission. Such a case-specific inquiry is not only possible but is necessary under the standard we articulate today. We find that the trial court did take into account the totality of the circumstances in making its determination that rescission had occurred as a matter of law.

The relevant factual consideration in this case is whether there was a meeting of the minds of the parties, which is manifested by the actions of the parties at the time the premium refund check was mailed, received, and cashed. We are concerned with these actions because these are the actions that relate to the elements of mutual rescission and whether there was indeed a meeting of the minds. Considering these actions, there is no other explanation than that Avemco intended rescission, which NCAC consented to upon the knowing and voluntary cashing of the premium refund check. The decision of NCAC to retain the premium refund for the period of time prior to and including the incident is inconsistent with its counterclaim that it is entitled to coverage for that same period of time. This inconsistency does not create a question of fact regarding whether a meeting of the minds occurred. NCAC's assertion that it did not intend to rescind, evidenced, as NCAC claims, by its counterclaims and the conclusory statements to that effect in the affidavits of its corporate officers, is not persuasive given its knowing and voluntary decision to *act* by cashing the premium refund check. Because the subjective intent of the insured is not a relevant inquiry when the objective manifestation of assent in the form of cashing the refund check has occurred, the mere assertion by NCAC's two corporate officers that it did not intend rescission, even when coupled with the representations by NCAC's counsel in the counterclaim to that effect, does not constitute a circumstance that rebuts the inference that NCAC consented to mutual rescission. Any such circumstance would necessarily have to be an *act* concomitant to the receipt of the premium refund check, not mere assertions after the check had been cashed. Such an act might raise a question of fact regarding whether there was a meeting of the minds to withstand a motion for summary judgment.

Accordingly, given that there are no material facts in dispute surrounding NCAC's cashing of the check and the effect of that action in accomplishing a meeting of the minds, we find that the trial court correctly granted summary judgment in Avemco's favor.

### IV.

■■■ We hold today that *Equitable Life Insurance Co. of Iowa v. Verploeg*, 123 Colo. 246, 227 P.2d 333 (1951), did not articulate a per se rule that mutual rescission occurs as a matter of law when an insured cashes a premium refund check tendered by an insurer with the express objective of accomplishing such a rescission. Instead, we hold that the *Verploeg* case implied a rule, which we make explicit today, that when an insured voluntarily and knowingly cashes a premium refund check, tendered by an insurer for the express purpose of effecting a mutual rescission, the act of cashing that check generally demonstrates rescission because there has been a meeting of the minds. Additionally, we hold that the subjective intent of an insured not to rescind is immaterial when that insured has acted in a manner that demonstrates an objective manifestation of consent to the rescission intended by the insurer. However, an insured may offer evidence to rebut the inference of rescission.

When there is no issue of material fact regarding the events surrounding the tender and cashing of the premium refund check, and therefore, whether there has been a meeting of the minds, a trial court may properly grant summary judgment to the insurer that rescission has occurred as a matter of law.

The court of appeals' judgment is reversed, and this case is remanded to the court of appeals to return to the trial court to reinstate the judgment for Avemco.